[This decision has been published in *Ohio Official Reports* at 93 Ohio St.3d 218.]

THE STATE EX REL. WAGERS, APPELLANT, *v.* INDUSTRIAL COMMISSION OF

OHIO ET AL., APPELLEES.

[Cite as *State ex rel. Wagers v. Indus. Comm.*, 2001-Ohio-1332.]

*Workers' compensation—Effect of retirement on claim for temporary total disability compensation—Wage-loss compensation denied when claimant's diminished earnings lacked the necessary causal relationship to his industrial injury.*

(No. 99-2235—Submitted May 30, 2001—Decided September 26, 2001.)

APPEAL from the Court of Appeals for Franklin County, No. 98AP-1573.

_____

*Per Curiam*.

{¶ 1} Appellant-claimant Jesse Wagers was a police officer for the village of Lockland. On January 16, 1995, claimant wrote to his supervisor, seeking an exemption from a village residency ordinance, stating:

"I am specifically requesting that the residency exemption be granted for [a] 24 month period. Prior to the expiration of that exemption, I will then retire as a Police Officer when my calculated 27 year eligibility requirement for retirement has been met."

{¶ 2} The village council responded favorably:

"Lt. Jesse Wagers is hereby granted an exemption from the residency requirement * * * for a period of 24 months from the effective date of this ordinance. This exemption is conditioned upon the requirement that before the expiration of that period of exemption[,] Lt. Wagers will retire from the Village of Lockland Police Department."

{¶ 3} On April 26, 1996, claimant was injured in a work-related motor vehicle accident, and a workers' compensation claim was allowed. Thereafter,

claimant received temporary total disability compensation ("TTC"). On June 14, 1996, claimant returned to work at his former position without restriction.

{¶ 4} In the months after his return, claimant performed all of his regular duties. Claimant also requested—and was granted—permission to work considerable overtime. In addition, claimant also worked as a member of the Hamilton County SWAT Team.

{¶ 5} On December 5, 1996, claimant informed his chief that effective January 3, 1997, he would be retiring. Claimant indeed retired on that date, and worked a couple of jobs thereafter—a short stint with United Dairy Farmers and a later custodial/maintenance job.

{¶ 6} In 1998, surgery related to claimant's original industrial injury prevented him from performing his custodial/maintenance duties for approximately two months. Claimant moved appellee Industrial Commission of Ohio for TTC over the period, as well as wage-loss compensation for periods when he had been working for less than he had made as a police officer.

{¶ 7} A district hearing officer denied both requests, writing:

"The salient facts related to [the] denial [of TTC] are as follows:

"[T]he claimant took a non-disability, regular and voluntary retirement from his position with the subject employer as a police officer on 1-3-97. This finding is based upon the claimant's testimony at hearing, as well as upon his letter to the employer (12-5-96), and the letter from the employer dated 4-3-98.

"Prior to the claimant's voluntary retirement, he sustained an injury resulting in a period of disability. The claimant returned to work on 6-14-96 after this disability. The Hearing Officer finds, based upon testimony at hearing from the chief of police of the employer and from the financial director from the employer, that the claimant returned to his former position of employment, without any restrictions. The record from the employer indicates that the claimant returned to [full-time] employment, often working substantial overtime without restriction.

The record clearly and unequivocally reflects that claimant did not seek light duty when he returned to work in 1996, nor did he allege any need for said light duty when he returned to work on 6-14-96. The claimant's conduct upon returning to work on 6-14-96 demonstrates a clear ability to perform his regular job duties as a police officer without restriction.

"At hearing, the claimant, through counsel, argued that his retirement was not voluntary and that it had a disability component. Specifically, the claimant felt he could no longer perform his duties as a police officer and as a consequence, he had to quit that employment. The Hearing Officer does not find the claimant's testimony at hearing to be persuasive. The Hearing Officer finds that this testimony stands in stark contrast to the documentary record in file relating to the claimant's retirement. In none of the correspondence between the claimant and the employer, up to the time of his retirement, does the claimant make any reference to any inability to perform his job duties or any restrictions arising from the present claim which would preclude him from performing his job duties as a police officer. The Hearing Officer finds [the] record to be clear and unambiguous regarding the claimant's voluntary retirement as a police officer. The Hearing Officer similarly finds that the claimant was fully capable of performing *all* of the job duties [of] a police officer at the time of his retirement.

"The record further demonstrates that the claimant returned to employment with a different employer after his voluntary retirement as a police officer. The record reflects that the claimant returned to employment in the capacity of a maintenance worker. The Hearing Officer finds, based upon evidence in the file and evidence adduced at [the] hearing, that this was not light duty work. The work consisted of cutting grass, painting and general maintenance duties.

"Based upon * * * the foregoing findings, the Hearing Officer finds that the claimant's request for payment of Temporary Total Disability Compensation is barred by his voluntary retirement * * *. This conclusion is based upon the above

stated findings concerning his retirement, as well as upon the decisions of the Ohio Supreme Court * * *.

"[The facts as to the denial of wage-loss compensation are:]

"It is the further finding and order of the Hearing Officer that the claimant's request for an award of working wage loss benefits [should] similarly be denied.

"The hearing officer finds, *in the present claim*, that the claimant's request for an award of working wage loss benefits be denied based upon the claimant's voluntary retirement from the position of police officer * * *.

"* * *

"In the present claim, the claimant did return to [full-time] work without restriction as a police officer. The claimant voluntarily retired from that employment. The Hearing Officer does not find that disability or work restrictions had anything to do with his retirement in the present claim. Accordingly, the Hearing Officer is not persuaded that the job restrictions stated on the claimant's C-140 are reliable or credible. The Hearing Officer does not find that claimant has established new and changed circumstances causing him to be placed under job restrictions preventing him from returning to the former position of employment long after his [voluntary] retirement.

"Accordingly, the Hearing Officer finds in the present claim, that the claimant was able at all times after his [voluntary] retirement to perform fully and without restriction his former job position. The Hearing Officer therefore finds and concludes that the claimant has not established any entitlement to any working wage loss benefits based upon the foregoing findings." (Emphasis *sic*.)

{¶ 8} A staff hearing officer affirmed and further appeal was refused.

{¶ 9} Claimant filed a complaint in mandamus in the Court of Appeals for Franklin County, alleging that the commission abused its discretion in denying both wage-loss compensation and TTC. The court of appeals disagreed and denied the writ, prompting this appeal to this court as of right.

**{¶ 10}** Claimant seeks wage-loss compensation from March 1, 1997 through February 27, 1998. He wants TTC from March 9, 1998 to May 4, 1998. The commission denied both requests and the court of appeals concurred. Three questions are now presented. As to the contested TTC, we must determine: (1) Does "some evidence" support the conclusion that claimant voluntarily retired from his former position of employment? and, if so, (2) Does that retirement bar TTC? Turning to wage loss, we must again ascertain the presence of "some evidence." For the reasons to follow, the judgment of the court of appeals is affirmed in part and reversed in part.

### 1. *Voluntary retirement–some evidence*

**{¶ 11}** Ample evidence supports the commission's decision in this regard. Claimant's January 16, 1995 letter—written nearly fifteen months before his accident—outlined a January/February 1997 retirement date. Even on the date of injury, his physician, Dr. Henry R. Van Loveren, remarked that claimant planned to retire in less than a year. Claimant's entreaty to regard other contrary evidence more favorably fails. The commission is the ultimate arbiter of evidentiary weight and credibility. *State ex rel. Stephenson v. Indus. Comm.* (1987), 31 Ohio St.3d 167, 31 OBR 369, 509 N.E.2d 946.

### 2. *Voluntary retirement—effect*

**{¶ 12}** Having determined that claimant voluntarily retired, we must determine the effect of the retirement on his claim for TTC. After the briefing in this case was finished, *State ex rel. Baker v. Indus. Comm.* (2000), 89 Ohio St.3d 376, 732 N.E.2d 355, was issued; this decision modified the voluntary-abandonment doctrine on which claimant's TTC denial had been premised. Baker was released to return to his former position after his work injury. He returned and later quit to take a better job. When Baker's injury later prevented him from performing the duties of his new job, he sought TTC.

**{¶ 13}** Before *Baker*, TTC would have been denied. See, *e.g., State ex rel. Jones & Laughlin Steel Corp. v. Indus. Comm*. (1985), 29 Ohio App.3d 145, 29 OBR 162, 504 N.E.2d 451; *State ex rel. Rockwell Internatl. v. Indus. Comm.* (1988), 40 Ohio St.3d 44, 531 N.E.2d 678*; State ex rel. McGraw v. Indus. Comm.* (1990), 56 Ohio St.3d 137, 564 N.E.2d 695. *Baker,* however, held that changing jobs no longer constituted voluntary abandonment sufficient to preclude TTC. It stressed that departure from the former position of employment for another job did not equate to an abandonment of the entire labor market, which would indeed bar TTC. Accordingly, we ruled:

"When a claimant who is medically released to return to work following an industrial injury leaves his or her former position of employment to accept another position of employment, the claimant is eligible to receive temporary total disability compensation pursuant to R.C. 4123.56(A) should the claimant reaggravate the original industrial injury while working at his or her new job." *Baker*, syllabus.

**{¶ 14}** We recognize that claimant technically did not "leav[e] his or her former position of employment to accept another position of employment." Claimant did not leave his well-paying law enforcement job so that he could work at United Dairy Farmers or as a custodian. He retired because he was eligible and because continued employment would violate a village ordinance. That he found other employment later does not transform the motivation for his retirement.

**{¶ 15}** *Baker,* however, stressed the difference between a claimant who leaves his or her former position of employment and one who deserts the entire labor market, and there is no evidence that this claimant ever intended the latter when he left the police force. To the contrary, claimant promptly obtained other work. Accordingly, in this instance, *Baker* preserves claimant's TTC eligibility. Since the evidence establishes that claimant was unable to work over the period in question due to his prior industrial injury, TTC is payable.

3. *Wage loss*

6

**{¶ 16}** The commission's order is, at times, confusing, but close examination reveals that wage-loss compensation was not denied because the commission considered voluntary retirement to be a *per se* bar. It denied wage-loss compensation because the circumstances following claimant's injury—including those surrounding his retirement—established that claimant's diminished earnings lacked the necessary causal relationship to his industrial injury. *State ex rel. Pepsi-Cola Bottling Co. v. Morse* (1995), 72 Ohio St.3d 210, 215, 648 N.E.2d 827, 831-832. Claimant was released to return to work without restriction in 1996. Claimant worked considerable overtime thereafter and eventually left for reasons unrelated to his injury. Taken together, the commission concluded that there was no injury-related factor/restriction that forced claimant to gravitate toward lesser-paying employment. Claimant suffered a wage loss because he chose a job that paid less. It is that simple. Wage loss was never intended as an income supplement for people who make less in retirement than they did before. As such, the commission did not abuse its discretion in denying wage-loss compensation.

**{¶ 17}** That portion of the court of appeals judgment that upheld TTC denial is reversed, and a writ of mandamus is issued ordering the commission to pay claimant temporary total compensation from March 9, 1998 to May 4, 1998. The balance of the judgment is affirmed.

*Judgment accordingly.*

MOYER, C.J., F.E. SWEENEY, PFEIFER, COOK and LUNDBERG STRATTON, JJ., concur.

DOUGLAS, J., concurs in part and dissents in part and would reverse the judgment of the court of appeals.

RESNICK, J., dissents.

————————————

*Harris & Burgin* and *Karen P. Weisensel*, for appellant.

*Betty D. Montgomery*, Attorney General, and *Dennis L. Hufstader*, Assistant Attorney General, for appellee Industrial Commission.

*Dinsmore & Shohl, L.L.P., Gary E. Becker* and *Brian P. Perry*, for appellee village of Lockland.

_____