DECISION
{¶ 1} Relator, Bernice L. Moten, commenced this original action requesting a writ of mandamus, ordering respondent, Industrial Commission of Ohio ("commission"), to vacate its order denying compensation for wage loss under R.C. 4123.56(B) and to issue a new order granting said compensation.
 {¶ 2} Pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals, this matter was referred to a magistrate who issued a decision, including findings of fact and conclusions of law. (Attached as Appendix A.) In her decision, the magistrate determined that there was some evidence in the record to support the commission's finding that relator failed to show a good faith search for comparable paying employment. Relator admitted that she took a job that paid less than half her former wage after applying at only three other perspective places of employment. Relator stated that she took the job because it was close and she liked the hours. Based upon this evidence, the magistrate concluded that the commission acted within its discretion in finding that relator failed to demonstrate a good faith search for comparably paying employment. Therefore, the magistrate recommended that the requested writ of mandamus be denied.
 {¶ 3} Relator has filed objections to both the magistrate's findings of fact and conclusions of law. Relator argues that the magistrate's findings of fact: (1) should have included a description of relator's medical restrictions which appear in the May 18, 2000 report of Dr. Mark McDonald; and (2) should not have concluded that the employer had jobs within relator's medical restrictions because the document supporting that finding did not include the signature of the plant physician.
 {¶ 4} These objections do not support the rejection of the magistrate's decision. As respondent points out, the magistrate's decision was based upon relator's failure to demonstrate a good faith job search. Therefore, the factual findings with which relator takes issue are irrelevant.
 {¶ 5} Relator also objects to the magistrate's conclusions of law. Relator argues in her first and third objections to the magistrate's conclusions of law that the magistrate incorrectly concluded that relator's acceptance of early retirement, ipso facto, permanently disqualified relator from eligibility for statutory wage loss benefits. Relator is mistaken. The magistrate's decision does not, in fact, reflect such a conclusion. Quite the contrary, the magistrate noted that a voluntary resignation from employment does not automatically bar an award of wage loss compensation under R.C. 4123.56(B). However, the commission may examine the circumstances surrounding an injured worker's departure from her prior employment together with the lack of effort to find comparably paying work. Here, the magistrate held that there was some evidence supporting the commission's determination that relator's industrial injury did not cause the post-retirement reduction in wages.
 {¶ 6} Relator argues in her second objection that the magistrate failed to address relator's contention that the commission's order violated the rules established in State ex rel. Mitchell v. Robbins Myers, Inc. (1983), 6 Ohio St.3d 481. We disagree. Relator's failure to demonstrate a good faith search for comparably paying employment can constitute "some evidence" upon which the commission would rely to deny the motion.
 {¶ 7} Following an independent review of this matter, we find that the magistrate has properly determined the pertinent facts and applied the appropriate law. Therefore, we overrule relator's objections. We adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained therein. In accordance with the magistrate's decision, we deny the requested writ of mandamus.
Objections overruled;
Writ of mandamus denied.
BOWMAN and DESHLER, JJ., concur.
DESHLER, J., retired of the Tenth Appellate District, assigned to active under authority of Section 6(C), Article IV, Ohio Constitution.
 IN MANDAMUS {¶ 8} In this original action in mandamus, relator, Bernice L. Moten, asks the court to issue a writ compelling respondent Industrial Commission of Ohio ("commission") to vacate its order denying compensation for wage loss under R.C. 4123.56(B) and to issue a new order granting the requested compensation.
Findings of Fact:
 {¶ 9} 1. In 1979, Bernice L. Moten ("claimant") began working for General Dynamics Land Systems, Inc. ("General Dynamics"), where she was a union member.
 {¶ 10} 2. In February 1996, claimant sustained an industrial injury, and her workers' compensation claim was allowed for conditions of the right shoulder.
 {¶ 11} 3. On December 20, 1996, claimant was found to have reached maximum medical improvement, and temporary total disability compensation was terminated. However, medical restrictions precluded claimant from returning to her former position of employment.
 {¶ 12} 4. The employer had jobs within claimant's medical restrictions, but, under the union contract, claimant did not have enough seniority to displace the workers currently in those positions.
 {¶ 13} 5. The employer, pursuant to the contract, offered claimant the opportunity to be placed on layoff and receive unemployment benefits until one of the jobs within her restrictions became available. In the alternative, claimant could take disability absence and receive sickness/accident benefits under an insurance plan that provided these benefits for a short term. In addition, claimant could obtain wage-loss benefits. Claimant elected to receive the sickness/accident benefits.
 {¶ 14} 6. When the sickness/accident benefits were exhausted, claimant applied for extended-disability benefits under the insurance plan. Benefits were denied because the employer had several union jobs within claimant's medical capacity.
 {¶ 15} 7. Thus, several options were available to claimant. She could take layoff status and receive unemployment benefits, with the right to return to a union job as soon as one became available. She could also qualify for wage-loss benefits until she had sufficient seniority to claim one of the union jobs. Both of these options would require claimant to engage in a job search.
 {¶ 16} 8. Third, the company notified claimant that she was eligible for a length-of-service pension. However, this retirement would be a resignation that would not entitle claimant to maintain the employment relationship and subsequently claim one of the union jobs. The company encouraged claimant to discuss each of the options with her union steward, which she did.
 {¶ 17} 9. Claimant stated at the hearing that she could perform the other jobs at the company but could not take them because, although she had substantial seniority, she did not have enough seniority to displace the workers currently in those positions pursuant to the requirements of the union contract. She chose to resign and receive her pension because she was not interested in looking for another job.
 {¶ 18} 10. After several years of retirement, claimant decided to re-enter the workforce. Claimant testified that she applied for work at four places — Dollar General, Odd Lots, a company whose name she could not remember, and Custom Staffing.
 {¶ 19} 11. In June 2000, claimant accepted the position at Custom Staffing paying $6 per hour, far below the amount she had earned as a union worker at General Dynamics, which was about $17.49 per hour. She stated at the hearing that she took that job because it was close and she liked the hours.
 {¶ 20} 12. Claimant then filed an application under R.C. 4123.56(B), claiming that this reduction in wages was caused by her industrial injury.
 {¶ 21} 13. In October 2001, a hearing was held before a district hearing officer ("DHO") who denied wage-loss compensation. A transcript of the hearing is included in the evidence before the court. The DHO found that, when claimant left General Dynamics in 1997, she chose not to take a lay off with the requisite job search for unemployment and chose not to seek wage-loss benefits. The DHO found that claimant, by taking regular retirement, lost all seniority and gave up her opportunity to return to comparably paying work. The DHO concluded that claimant had not demonstrated that her wage loss was causally connected to her injury.
 {¶ 22} 14. On appeal, a staff hearing officer denied compensation as follows, in pertinent part:
 {¶ 23} "The Staff Hearing Officer denies the C-140 request for wage loss benefits from 6/1/2000 and continuing.
 {¶ 24} "The Staff Hearing Officer finds the case law submitted by injured worker's counsel is not factually on point to this case.
 {¶ 25} "The Staff Hearing Officer finds in April 1997 the injured worker took a general (not disability) retirement and clearly did NOT intend to perform any other type of work. She clearly intended to abandon the workforce at that time. The injured worker CHOSE at that time not to take a layoff and wait for a call back for potentially one of the positions identified that she would be able to perform within her restrictions that she did not have sufficient seniority to obtain at that time. The injured worker CHOSE not to pursue job search and wage loss benefits at that time. The injured worker CHOSE to take a regular retirement without intention of returning to any work.
 {¶ 26} "The Staff Hearing Officer finds that by making the choices the injured worker made, she lost all seniority with the instant employer and abandoned her opportunity to return to this employer in comparable paying work within her restrictions.
 {¶ 27} "It was not until June of 2000, when the injured worker decided she needed more money than her retirement benefits provided that she chose to return to the workforce. However, even at that time, the injured worker did not seek re-employment with the employer herein, nor did she search for comparably paying work. [Emphasis added.]
 {¶ 28} "For these reasons, the Staff Hearing Officer finds any wage loss the injured worker is now alleging is NOT the result of the injury on 02/21/1996. As a result, the injured worker's request for wage loss is denied." (Emphasis sic.)
 {¶ 29} 15. The commission refused further appeal.
Conclusions of Law:
 {¶ 30} Claimant argues that the commission abused its discretion in denying compensation for wage loss under R.C. 4123.56(B). The magistrate finds that one of the rationales set forth by the commission was clearly within its discretion and, therefore, the court should not grant a writ of mandamus.
 {¶ 31} Several established principles apply to the court's consideration of the present issues. First, a voluntary resignation from employment does not automatically bar an award of wage-loss compensation under R.C. 4123.56(B). State ex rel. McCoy v. Dedicated Transport, Inc.,97 Ohio St.3d 25, 2002-Ohio-5305. The circumstances surrounding an injured worker's departure from his prior employment may, however, be relevant. See State ex rel. Wagers v. Indus. Comm. (2001),93 Ohio St.3d 218. For example, where an injured worker takes retirement benefits and then re-enters the workforce in a lower paying job, the commission may find, based on the circumstances of the retirement together with the lack of effort to find comparably paying work, that the industrial injury did not cause the post-retirement reduction in wages. Id. A person may simply choose the lower paying work based on lifestyle choices. Id. at 222 (observing that wage-loss compensation was not intended as an income supplement for those who choose different jobs after retirement).
 {¶ 32} The cause of the wage loss is crucial, and the commission has, therefore, required that an applicant for wage loss compensation must demonstrate that he or she made a good-faith search for comparably paying employment. The courts have held that the commission has discretion to require the job search and to scrutinize the number and quality of job contacts in determining whether the search was adequate. See, e.g., State ex rel. Chora v. Indus. Comm. (1996), 74 Ohio St.3d 238; State ex rel. Consol. Freightways v. Engerer (1996), 74 Ohio St.3d 241; and State ex rel. Vanover v. Emery Worldwide (1997), 80 Ohio St.3d 367.
 {¶ 33} The commission has promulgated rules that, among other things, recite the proofs required to establish the good-faith job search for comparably paying employment. For example, as of May 1997, applicants for wage-loss compensation must register with the Ohio Bureau of Employment Services and must also contact the former employer at the outset of the job search. See Ohio Adm. Code 4125-1-01(D)(1)(a).
 {¶ 34} In the order at issue here, the commission made an explicit finding that the claimant failed to show a good-faith search for comparably paying employment. This finding was supported by some evidence in the record. Claimant admitted she took a job that paid less than half of her former wage after applying at only three other places. She said she took the job because it was close and she liked the hours. The magistrate concludes that the commission was within its discretion to find that the evidence did not demonstrate a good-faith search for comparably paying employment. Chora; Engerer; Vanover, supra. Thus, the commission had a reasonable basis for denying wage-loss compensation.
 {¶ 35} Claimant has not met her burden in mandamus of proving that the denial of wage-loss compensation was an abuse of discretion. The commission's explicit findings regarding the claimant's failure to engage in a job search for comparably paying work were within its discretion, and these findings supported the denial of compensation under R.C.4123.56(B). Therefore, the magistrate recommends that the court deny the requested writ.