DECISION ON OBJECTIONS TO THE MAGISTRATE'S DECISION.
{¶ 1} Relator, Reliance Electric Company, has filed this original action in mandamus requesting this court to issue a writ of mandamus ordering respondent Industrial Commission of Ohio to vacate its award of temporary total disability compensation to respondent-claimant Leon Stevens beginning July 12, 2000, and to enter a new order denying said compensation on the grounds that respondent-claimant voluntarily abandoned the workforce when he retired from Reliance Electric Company.
 {¶ 2} This court referred the matter to a magistrate, pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals, who issued a decision, including findings of fact and conclusions of law. (Attached as Appendix A.) The magistrate concluded that relator had failed to establish that the commission had abused its discretion and that this court should deny the requested writ.
 {¶ 3} Relator filed objections to that decision of the magistrate, essentially rearguing those issues already adequately addressed in the decision of the magistrate. For the reasons stated in the decision of the magistrate, the objections are overruled.
 {¶ 4} Following independent review pursuant to Civ.R. 53, we find that the magistrate has properly determined the pertinent facts and applied the salient law to them. Accordingly, we adopt the decision of the magistrate as our own, including the findings of fact and conclusions of law contained in it. In accordance with the decision of the magistrate, the requested writ is denied.
Objections overruled;
writ denied.
Petree and Brown, JJ., concur.
 (APPENDIX A) MAGISTRATE'S DECISION IN MANDAMUS {¶ 5} In this original action, relator, Reliance Electric Company, requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its award of temporary total disability ("TTD") compensation to respondent Leon Stevens ("claimant") beginning July 12, 2000, and to enter an order vacating the award on grounds that claimant voluntarily abandoned the workforce when he retired from Reliance Electric Company.
 Findings of Fact {¶ 6} 1. On March 3, 1986, claimant sustained an industrial injury while employed as a machinist at relator's plant located in Ashtabula, Ohio. Relator is a self-insured employer under Ohio's workers' compensation laws. The industrial claim is allowed for: "sprain medial collateral ligament right knee; incomplete tear posterior medial meniscus right knee," and is assigned claim number 908662-22.
 {¶ 7} 2. On or about September 29, 1998, claimant underwent surgery for a total right knee replacement. The surgery was performed by John J. Kastrup, M.D. Thereafter, claimant was admitted to Health South Rehabilitation Hospital of Erie. After a ten-day period of rehabilitation, he was discharged on October 10, 1998.
 {¶ 8} 3. On a C-84 dated March 7, 1999, Dr. Kastrup certified a period of TTD beginning December 19, 1997 to an estimated return-to-work date of April 1, 1999. Dr. Kastrup indicated on the C-84 that claimant could return to "modified duty" on April 1, 1999. The C-84 form asks the physician:
Is the injured worker able to return to other employment including light duty, alternative work, modified work or transitional work?
 {¶ 9} In response to the above query, Dr. Kastrup placed a checkmark in the "[y]es" box.
 {¶ 10} 4. On or about May 1, 1999, claimant elected to take an age and service retirement from relator. Approximately one month prior to the retirement, relator closed its plant where claimant had worked for many years.
 {¶ 11} 5. On February 5, 2002, claimant underwent a second total knee replacement.
 {¶ 12} 6. On April 20, 2002, Dr. Kastrup completed another C-84. He certified TTD from December 19, 1997 to "present." He indicated by checkmarks that claimant was unable to return to his position of employment at the time of injury, but he was able to return to "other employment including light duty, alternative work, modified work or transitional work." Dr. Kastrup wrote: "S/P [status post] revision total knee 2/5/02."
 {¶ 13} 7. By letter dated May 9, 2002, claimant's counsel submitted Dr. Kastrup's April 20, 2002 C-84 to relator. By letter dated May 16, 2002, relator informed claimant's counsel that the C-84 request was denied.
 {¶ 14} 8. On June 4, 2002, Dr. Kastrup wrote:
* * * I do not believe that Mr. Stevens is currently capable of working. He still continues to have difficulties after a total knee replacement. He is getting some instability despite revision, which prevents him from even walking without pain and swelling. Our plan is currently to revise this yet in order to hopefully alleviate his symptoms. I would hope that he would be functional and able to do modified job duties in the future, but would anticipate we're still looking at perhaps a 4 to 6 month recovery period.
 {¶ 15} 9. Citing Dr. Kastrup's June 4, 2002 report, claimant's counsel asked relator to reconsider the TTD request. By letter dated June 28, 2002, relator notified claimant's counsel that the TTD request remained denied.
 {¶ 16} 10. On July 12, 2002, claimant moved that relator be ordered to pay the requested TTD compensation.
 {¶ 17} 11. Following an October 1, 2002 hearing, a district hearing officer ("DHO") issued an order that denied TTD compensation from December 19, 1997 through July 11, 2000, on grounds that compensation for that period is barred by R.C.4123.52's two-year limitation. The DHO denied TTD compensation beginning July 12, 2000, on grounds that "claimant voluntarily retired from the employer and the workforce effective 5/1/99."
 {¶ 18} 12. Claimant administratively appealed the DHO's order of October 1, 2002. Following a January 3, 2003 hearing, a staff hearing officer ("SHO") issued an order stating:
The order of the District Hearing Officer, from the hearing dated 10/01/2002, is modified to the following extent: That part of the prior decision addressing claimant's request for temporary total compensation from 7/12/2000 and continuing, is hereby vacated in its entirety.
That part of the prior decision finding the request for temporary total disability from 12/19/97 through 7/11/2000 was not timely made within the two year statutory period, and based upon this finding, denying temporary total compensation for said period, is affirmed.
As relates to claimant's request for temporary total compensation from 7/12/2000 and continuing, the Hearing Officer finds that claimant's election to take an age and service type retirement on or about 5/1/99, does not preclude payment of temporary total disability benefits as claimant's retirement was not voluntary and therefore, does not constitute an abandonment of employment.
More specifically, the Hearing Officer finds that on 10/2/1998, claimant underwent authorized surgery for a total left [sic] knee replacement at Health South Rehabilitation Hospital.
Subsequent to this surgery, claimant's physician, Dr. Kastrup, M.D., was certifying claimant temporarily and totally disabled due solely to the injury herein, through all times relevant to claimant's decision to accept the age and service pension.
Additionally, prior to claimant's election to accept said position [sic], it is uncontroverted that the plant where claimant formerly worked, closed down completely. It was also not disputed that claimant was not offered any opportunity to work at any other of the employer's facilities after claimant's plant closed down.
Therefore, as claimant's physician was certifying claimant to be temporarily and totally disabled due [to the] injury at the time claimant elected to retire, the Hearing Officer concludes that claimant's decision was predicated in part upon this injury as well as the fact that the plant had previously closed, leaving claimant no place to return to work, even if his physician had released him.
Given these findings, the Hearing Officer concludes that claimant's retirement on or about 5/1/99, was not voluntary, nor an abandonment of employment and as such, claimant remains eligible for payment of temporary total disability benefits in this claim.
It is ordered, based upon C-84 reports in file from Dr. Kastrup, that temporary total compensation be paid from 7/12/2000 through 4/19/2002, with additional temporary total compen-sation to be paid upon submission of medical evidence of temporary total disability due the allowed conditions herein.
It is also found persuasive in awarding this period of temporary total compensation that claimant underwent a second total knee replacement surgery on 2/5/2002.
In awarding this temporary total compensation, the Hearing Officer has relied upon the stipulation of the parties that claimant had not been released to return to work at his former position of employment when he elected to retire; that the plant where claimant worked closed down approximately one month prior to claimant's retirement and that the effective date of claimant's retirement was 5/1/99.
The Hearing Officer also relies upon the C-84 reports from Dr. Kastrup in file, particularly, the C-84 reports dated 3/7/99 and 4/20/02 as well as the discharge report dated 10/2/1998 from Health South Rehabilitation Hospital.
All evidence contained within the record was reviewed and considered.
The prior decision is affirmed in all other respects.
 {¶ 19} 13. On January 23, 2003, another SHO mailed an order refusing relator's administrative appeal from the SHO's order of October 1, 2002.
 {¶ 20} 14. On February 5, 2003, relator moved for reconsideration of the SHO's January 23, 2003 refusal order. On April 2, 2003, the commission mailed an order denying relator's February 5, 2003 motion for reconsideration.
 {¶ 21} 15. On April 23, 2003, relator, Reliance Electric Company, filed this mandamus action.
 Conclusions of Law {¶ 22} It is the magistrate's decision that this court deny relator's request for a writ of mandamus, as more fully explained below.
 {¶ 23} There is no evidence of record showing that claimant ever reentered the workforce after his May 1, 1999 retirement from relator. Although his attending physician, Dr. Kastrup, has repeatedly certified a medical inability to return to the former position of employment, he did release claimant to return to alternative types of employment as early as April 1, 1999, one month prior to the retirement.
 {¶ 24} According to relator, because claimant failed to reenter the workforce following his retirement, notwithstanding his ability to perform alternative types of employment, the commission abused its discretion by determining that the retirement was involuntary and did not constitute an abandonment of his employment that would bar TTD compensation. The magistrate disagrees with relator's contention.
 {¶ 25} In support of its contention, relator cites three cases which this magistrate will address.
 {¶ 26} The first case is State ex rel. McCoy v. DedicatedTransport, Inc., 97 Ohio St.3d 25, 2002-Ohio-5305, the syllabus of which states:
A claimant who voluntarily abandoned his or her former position of employment or who was fired under circumstances that amount to a voluntary abandonment of the former position will be eligible to receive temporary total disability compensation pursuant to R.C. 4123.56 if he or she reenters the work force and, due to the original industrial injury, becomes temporarily and totally disabled while working at his or her new job.
 {¶ 27} The second case cited by relator is State ex rel.Reynolds v. Indus. Comm., 97 Ohio St.3d 53, 2002-Ohio-5352, ¶ 5.Reynolds was decided by the court the same day as McCoy.
Relator quotes the following portion of Reynolds:
Before Baker II [State ex rel. Baker v. Indus. Comm.
(2000), 89 Ohio St.3d 376], all claimants who voluntarily left their former jobs forever forfeited eligibility for TTC [temporary total disability compensation]. Today, permanent forfeiture is limited to those whose decision to leave the former position of employment ultimately translates into a voluntary departure from the entire work force. State ex rel. Wagers v.Indus. Comm. (2001), 93 Ohio St.3d 218[.] * * *
 {¶ 28} The third case cited by relator is State ex rel.Wiley v. Whirlpool Corp., Franklin App. No. 02AP-340, 2002-Ohio-6558. Subsequent to the filing of relator's brief in this action, the Supreme Court of Ohio affirmed this court's judgment in Wiley and, in so doing, issued its opinion on October 15, 2003. State ex rel. Wiley v. Whirlpool Corp.,100 Ohio St.3d 110, 2003-Ohio-5100.
 {¶ 29} Relator quotes the following portion of this court's opinion in Wiley:
* * * Accordingly, relator's having voluntarily abandoned her position of employment with Whirlpool does not eliminate any possibility of her receiving temporary total disability com-pensation. As the Supreme Court explained in McCoy,
however, receipt of such benefits is contingent on relator's reentering the workforce and then, because of the original injury, becoming temporarily or totally disabled while working at the new job. Because the record contains no evidence that relator reentered the workforce, temporary total disability compensation is not available under the principle set forth in McCoy. * * *
Id. at ¶ 15.
 {¶ 30} The magistrate observes that the decision of the Supreme Court of Ohio in Wiley in no way detracts from this court's opinion in Wiley.
 {¶ 31} The three cases cited by relator do not support relator's contention. Those cases do pronounce well-established law that has evolved since State ex rel. Baker v. Indus. Comm.
(2000), 89 Ohio St.3d 376 ("Baker II"). Even a claimant who has voluntarily abandoned his or her former position of employment will again be eligible to receive TTD compensation if he or she reenters the workforce and, due to the original industrial injury, becomes temporarily and totally disabled at his or her new job.
 {¶ 32} It is well-settled that a voluntary abandonment of the former position of employment can bar TTD compensation. However, an injury-induced abandonment is never considered to be voluntary. State ex rel. Rockwell Internatl. v. Indus. Comm.
(1988), 40 Ohio St.3d 44.
 {¶ 33} It is also well-settled that the claimant does not have a burden of disproving a voluntary abandonment of the former position of employment in order to show entitlement to TTD compensation. State ex rel. Superior's Brand Meats, Inc. v.Indus. Comm. (1997), 78 Ohio St.3d 409. The burden of proof with respect to voluntary abandonment falls upon the employer or the administrator. Id.
 {¶ 34} The issue before the commission was whether claimant had voluntarily abandoned his former position of employment when he took an age and service retirement from relator in May 1999, following his knee surgery in October 1998. The issue was not, as relator suggests here, whether claimant had decided to permanently abandon the workforce when he took his retirement. Whether or not claimant had reentered the workforce at some point in time following the retirement was irrelevant to the issue of whether the retirement was injury-induced and, thus, involuntary under Rockwell, supra.
 {¶ 35} Evidence of post-retirement employment would have become relevant if the commission had determined, in the first instance, that the May 1999 retirement was not injury-induced under Rockwell. Had the commission determined in the first instance that the retirement was not injury-induced, claimant could still preserve his TTD eligibility by showing that he had reentered the workforce following the retirement, as the McCoy
case indicates. Clearly, given that the commission found that the retirement was not voluntary, claimant had no burden to show that he had reentered the workforce to preserve his TTD eligibility.
 {¶ 36} Relator's interpretation of McCoy, Reynolds, andWiley, violates well-settled law regarding entitlement to TTD compensation.
 {¶ 37} In State ex rel. Ramirez v. Indus. Comm. (1982),69 Ohio St.2d 630, the court defined temporary total disability under R.C. 4123.56 as a disability which prevents a worker from returning to his former position of employment. The former position of employment is the group of tasks and responsibilities making up the duties of the employee at the time of his injury. Id. at 632. Speaking of the Ramirez test for determining TTD, the court in McCoy, at ¶ 33, explains:
* * * The test itself does no more than fix the demands of the former position as the standard by which to gauge the claimant's medical impairment in disability terms; it has absolutely nothing to do with conditioning eligibility for TTD compensation on the actual availability of the former position of employment.
 {¶ 38} Under Ramirez, an injured worker who can show an inability to return to the former position of employment is entitled to TTD compensation regardless of whether he or she is medically able to perform some other type of employment.
 {¶ 39} An injured worker who is medically unable to return to the former position of employment but is medically able to perform alternative or light duty employment is not required to search for alternative employment in order to preserve TTD eligibility. State ex rel. Ameen v. Indus. Comm.100 Ohio St.3d 161, 2003-Ohio-5362 (comparing TTD compensation to wage loss compensation). However, an injured worker who is medically unable to return to the former position of employment but is medically able to perform alternative employment is not entitled to TTD compensation if the employer offers "suitable employment" that comports with the treating physician's release to light duty work. State ex rel. Coxson v. Dairy Mart Stores of Ohio, Inc.
(2000), 90 Ohio St.3d 428. Here, Reliance Electric did not offer claimant alternative employment, but, in fact, closed down its plant.
 {¶ 40} In short, claimant's failure to reenter the workforce following his retirement from relator does not render his retirement involuntary and does not preclude his receipt of TTD compensation.
 {¶ 41} Accordingly, for all the above reasons, it is the magistrate's decision that this court deny relator's request for a writ of mandamus.