DECISION
{¶ 1} Relator, Joseph Shea, commenced this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which denied relator's request for temporary total disability ("TTD") compensation from September 19, 2005, through February 1, 2006, and ordering the commission to find that he is entitled to that compensation. *Page 2 
 {¶ 2} This court referred the matter to a magistrate of this court, pursuant to Civ.R. 53 and Loc.R. 12(M) of the Tenth District Court of Appeals. (Attached as Appendix A.) Therein, the magistrate recommended that this court deny relator's request for a writ of mandamus. Relator has filed objections to the magistrate's decision, and, therefore, this matter is now before this court for a full, independent review.
 {¶ 3} By his objections, relator generally argues that the magistrate erred in concluding that the commission did not abuse its discretion in denying his request for TTD compensation. Relator's objections focus on the magistrate's analysis regarding whether the report of Dr. Judith Wachendorf, a non-examining physician, constitutes some evidence upon which the commission could rely in denying his request for TTD compensation. Relator sets forth various arguments as to why, in his view, the magistrate's analysis on this issue was deficient. Among these contentions is the assertion that the magistrate incorrectly determined that relator returned to his former position of employment after the injury and continued to work in that capacity until he was terminated in September 2005.
 {¶ 4} TTD compensation awarded pursuant to R.C. 4123.56 has been defined as compensation for wages lost where a claimant's injury prevents a return to the former position of employment. State ex rel.Ramirez v. Indus. Comm. (1982), 69 Ohio St.2d 630. The former position of employment is the group of tasks and responsibilities making up the duties of the employee at the time of his injury. Id. at 632. Regarding the Ramirez test for determining TTD, the Supreme Court of Ohio, inState ex rel. McCoy v. Dedicated Transport, Inc., 97 Ohio St.3d 25,2002-Ohio-5305, explained: "The test itself does no more than fix the demands of the former position as the standard by which to gauge the *Page 3 
claimant's medical impairment in disability terms; it has absolutely nothing to do with conditioning eligibility for TTD compensation on the actual availability of the former position of employment." Id. at ¶ 33. Moreover, "[u]nder Ramirez, an injured worker who can show an inability to return to the former position of employment is entitled to TTD compensation regardless of whether he or she is medically able to perform some other type of employment." State ex rel. Reliance ElectricCo. v. Stevens, Franklin App. No. 03AP-402, 2004-Ohio-1779, at ¶ 38.
 {¶ 5} Dr. Wachendorf opined in her report that the requested period of TTD compensation was not supported by the record. She reached this conclusion based on her findings that relator was working until his termination on September 19, 2005, and that Dr. Brian Nobbs' treatment notes from October 2005 noted improvements in relator's conditions. Regarding relator's termination on September 19, 2005, Dr. Wachendorf noted that evidence in the file indicated that relator was terminated because he backed into another car; she opined that relator was terminated for reasons other than the allowed conditions. Thus, Dr. Wachendorf essentially reasoned that because relator was working until he was terminated in September 2005 for reasons unrelated to the allowed conditions, and because the physician notes in October 2005 noted improvements in relator's conditions, relator was not entitled to the requested TTD compensation. According to relator, Dr. Wachendorf's report was deficient because she did not compare the tasks and responsibilities of his employment position in September 2005 with his duties associated with his employment position when he was injured in October 2004 (his "former position of employment"). *Page 4 
 {¶ 6} In analyzing the issue of whether Dr. Wachendorf's report constituted some evidence upon which the commission could rely, the magistrate observed that relator returned to work following his injury and continued to work until September 19, 2005, when he was terminated. The magistrate additionally observed in her decision that relator continued to work in his former position of employment until he was terminated. Thus, in analyzing the issue of whether relator is entitled to TTD compensation, the magistrate appears to have assumed that relator returned to his former position of employment after the injury and continued to work in that position of employment until he was terminated on September 19, 2005. But the record reveals that when relator was injured in October 2004 he was working as a "wheel chair transport driver" for Hillcrest Ambulance Service, and when he was terminated in September 2005 he was working as "head of equipment" for Gray Landfield.
 {¶ 7} Even though we do not fully agree with the magistrate's reasoning in her conclusions of law, we agree with her ultimate conclusions; i.e., that relator has not demonstrated that the commission abused its discretion in denying his request for TTD compensation and that his requested writ must be denied, based on the following.
 {¶ 8} According to the commission, when a claimant's own evidence is insufficient to support TTD compensation, it is unnecessary for the commission to rely upon other evidence to support a denial of TTD compensation. In this regard, the commission argues that deficiencies in the documentation submitted by a claimant in support of TTD compensation can be the "some evidence" supporting the commission decision to deny the claimant's request for TTD compensation. We agree. *Page 5 
 {¶ 9} "Where the documentation submitted by the claimant is insufficient to meet the burden of showing the existence of a direct and proximate causal relationship between the industrial injury and the claimed disability, that deficiency can constitute some evidence supporting the commission's denial of compensation." State ex rel. Westv. Goffena Furniture, Inc., Franklin App. No. 04AP-1267, 2005-Ohio-5084, at ¶ 34, citing both State ex rel. Martin v. Indus. Comm. (2002),94 Ohio St.3d 376, and State ex rel. Thomas v. Indus. Comm. (1989),42 Ohio St.3d 31. Moreover, the commission is the sole evaluator of the weight and credibility of evidence. State ex rel. Strimbu v. Indus. Comm.,106 Ohio St.3d 173, 2005-Ohio-4386, at ¶ 10.
 {¶ 10} The C-84 of Dr. Nobbs, filed by relator in support of the requested TTD compensation, certified that relator was unable to work from September 19, 2005, to January 31, 2006, and estimated a return-to-work date of February 1, 2006. But relator testified at the hearing before the district hearing officer ("DHO") that he "worked off and on for several employers from" September 19, 2005, through February 1, 2006. (See Sept. 21, 2006, DHO decision.) In view of relator's testimony at the hearing, the DHO found the C-84 of Dr. Nobbs not credible evidence upon which to base TTD compensation. Consequently, the DHO denied relator's request for TTD compensation from September 19, 2005, to February 1, 2006. Relator appealed to a staff hearing officer ("SHO"), who affirmed the prior order of the DHO, "with additional reasoning." As to relator's request for TTD compensation, the SHO found that the requested period of disability was not causally related to the allowed conditions in the claim, on the basis of Dr. Wachendorf's May 19, 2006 report. On that additional basis, the SHO denied relator's request for TTD compensation. *Page 6 
 {¶ 11} Thus, as recognized by the magistrate, the commission denied the requested TTD compensation on two bases: (1) the C-84 of Dr. Nobbs filed in support of TTD compensation was not credible; and (2) the requested period of disability is not causally related to the allowed conditions based on Dr. Wachendorf's report. Relator's objections to the magistate's decision focus on the report of Dr. Wachendorf, and whether that report constitutes some evidence upon which the commission could rely; however, relator's objections do not directly address the other reason the commission provided to explain the denial of TTD compensation.
 {¶ 12} Regardless of whether Dr. Wachendorf's report constituted some evidence upon which the commission could rely in denying TTD compensation, the commission did not abuse its discretion in denying the requested compensation. In the C-84 of Dr. Nobbs, dated December 12, 2005, Dr. Brian R. Nobbs certified that relator was unable to work from September 19, 2005, through January 31, 2006, because of his allowed conditions, even though relator testified that he worked "off and on" during that period of time. Therefore, we conclude that it was not an abuse of discretion for the commission, which is the sole evaluator of the weight and credibility of evidence, to find Dr. Nobbs' certification not credible, and to deny the requested TTD compensation on that basis.
 {¶ 13} Following our independent review of this matter, we find no error in the magistrate's findings of fact. However, for the reasons discussed above, we do not fully agree with the magistrate's reasoning in her decision regarding the issue of whether relator is entitled to TTD compensation. Therefore, although we adopt the magistrate's decision as our own as to the findings of fact, we do not adopt the conclusions of law. Nonetheless, we have resolved that the commission did not abuse its discretion by *Page 7 
denying relator's request for TTD compensation on the basis of its finding that the C-84 of Dr. Nobbs submitted by relator is not credible evidence upon which to base TTD compensation. Thus, we agree with the magistrate that relator is not entitled to a writ of mandamus ordering the commission to vacate its decision denying relator the requested TTD compensation. Consequently, we overrule relator's objections to the magistrate's decision to the extent he argues that the magistrate incorrectly concluded that the commission did not abuse its discretion in denying his request for TTD compensation. In accordance with the magistrate's decision, we deny the requested writ of mandamus.
Objections overruled; writ denied.
 BRYANT and McGRATH, JJ., concur. *Page 8 
 APPENDIX A MAGISTRATE'S DECISION Rendered on July 31, 2007 IN MANDAMUS {¶ 14} Relator, Joseph Shea, has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order which denied relator's request for temporary total disability ("TTD") compensation and ordering the commission to find that he is entitled to that compensation. *Page 9 
Findings of Fact: {¶ 15} 1. Relator sustained a work-related injury on October 12, 2004, and his claim was originally allowed for the following conditions: "sprain left knee/leg; left knee abrasion."
 {¶ 16} 2. On October 13, 2004, relator had an X-ray which revealed:
 AP and lateral views of the left knee show no fracture or acute osseous abnormality. There is mild medial joint space narrowing. There is prominence of the patellofemoral joint space spurring. A small suprapatellar effusion is likely present.
 IMPRESSION:
 No acute fracture is seen in the left knee. Degenerative changes are noted as above.
 {¶ 17} 3. Relator returned to work with Hillcrest Ambulance Service ("employer").
 {¶ 18} 4. Relator treated with Dr. Brian R. Nobbs. The record contains office notes beginning December 2004 and ending November 28, 2005. In the December 30, 2004 office note, Dr. Nobbs noted that relator had been having severe left knee pain since the October work injury, and that he had no prior history of left knee trauma. Dr. Nobbs noted severe difficulty with gait and extreme difficulty with stairs. Relator began receiving some type of treatment and, when he returned to Dr. Nobbs on February 28, 2005, Dr. Nobbs noted that relator was responding well to treatment, that he was showing improvement in all areas, and he noted a slight improvement in gait, activities of daily living ("ADL"), and strength with less fixation. In his February 15, 2005 note, Dr. Nobbs noted that relator's conditions were aggravated due to ten days without treatment. On June 2, 2005, Dr. Nobbs noted significant improvement with all goals, greater ability concerning ADL due to *Page 10 
the treatment, improved gait, strength, and less fixation. Then, on June 14, 2005, Dr. Nobbs noted that relator's conditions were aggravated due to 12 days without care. On August 9, 2005, Dr. Nobbs noted that relator's conditions continued to improve in all respects; however, on August 23, 2005, Dr. Nobbs again noted that relator's conditions had been aggravated due to 15 days without treatment. On October 18, 2005, Dr. Nobbs noted that relator had improved overall during his course of treatment; however, he noted that relator still had significant deficits in strength, range of motion and gait, and indicated that he wanted relator to have an MRI. In his November 28, 2005 office note, Dr. Nobbs merely noted that they were awaiting approval for diagnostic testing.
 {¶ 19} 5. Relator was terminated from his employment on September 19, 2005, apparently because he backed into another car.
 {¶ 20} 6. Relator filled out a C-84 on December 6, 2005, and noted that he had been working with Gary Landfield during the requested period of disability. Dr. Nobbs certified that relator was temporarily and totally disabled from September 19, 2005 through an estimated return-to-work date of February 1, 2006.
 {¶ 21} 7. The December 13, 2005 MRI revealed:
 At least moderate-severity hypertrophic tricompartmental osteoarthropathy with macerated and partially autodigested meniscal tears both medially and laterally. Medial femorotibial osteoarthropathy does predominate with diffuse high-grade chondromalacia and early stress or insufficiency microfracturing of the weightbearing tibial plateau with stress osteoedema. No displaced chondral body within a moderate joint fluid collection. For details and pertinent negatives, please see above.
 {¶ 22} 8. In March 2006, relator filed a motion requesting the following: *Page 11 
 Please amend claim to include osteoarthritis left knee[;] chond[r]omal[a]cia left knee[;] lateral and medial meniscus tear left knee[;] either by direct cause or by aggravation/acceleration of the conditions[;] and top pay temporary total compensation from 9/19/05 to the present and continuing.
 {¶ 23} 9. Judith Wachendorf, M.D., provided a physician review dated May 19, 2006. Dr. Wachendorf was asked to give her opinion on whether relator's claim should be additionally allowed for the requested conditions; which, if any, of those conditions was directly caused by, aggravated by, or caused by a flow through from the work-related injury; and whether the requested period of disability beginning September 19, 2005 to present was appropriate. A review of Dr. Wachendorf's report reveals that she considered the following evidence: emergency room records, the October 13, 2004 X-ray, a physical therapy note from October 2004, Dr. Freeman's September 6, 2005 report concerning percentage of impairment, a review by Dr. Lindquist referencing Dr. Nobbs' office notes, physical therapy notes from June 16 through September 1, 2005, an October 17, 2005 report by Dr. Uhl, the December 13, 2005 MRI, and the April 26, 2006 report of Dr. Nobbs. Ultimately, Dr. Wachendorf concluded that relator's claim should be additionally allowed for aggravation of osteoarthritis left knee and aggravation of chondromalacia of the left knee. However, Dr. Wachendorf concluded there was insufficient medical evidence in the record to support the conditions of tears of the lateral and medial meniscus. Dr. Wachendorf noted that the radiologist read the MRI and concluded these were degenerative tears which were not attributed to trauma and that they could have happened in the absence of trauma. Lastly, Dr. Wachendorf opined that the requested period of TTD compensation was not supported by the record. Dr. *Page 12 
Wachendorf noted that relator was working in September 2005 and that Dr. Nobbs' treatment notes from October 2005 noted improvement in his conditions.
 {¶ 24} 10. In response, Dr. Nobbs authored a report dated June 7, 2006. Dr. Nobbs opined that the comparison of the 2004 X-ray and the 2005 MRI conclusively demonstrates the rapid deterioration of relator's conditions and establishes the causal connection. Dr. Nobbs also indicated that relator told him his knee gave out in September and this caused the accident which led to his termination.
 {¶ 25} 11. Relator's motions were heard before a district hearing officer ("DHO") on September 14, 2006. The DHO determined that relator's conditions should be amended to include the following additional conditions: "aggravation of pre-existing osteoarthritis of the left knee and aggravation of pre-existing chondromalacia of the left knee." Thereafter, the DHO concluded that TTD compensation should be denied for the following reasons:
 The injured worker testified at the hearing that he has worked off and on for several employers from 09/19/2005 through 02/01/2006. The District Hearing Officer therefore finds that the C-84 of Dr. Nobbs is not credible evidence upon which to base the payment of temporary total disability compensation in this claim.
 {¶ 26} 12. Relator's appeal was heard before a staff hearing officer ("SHO") on November 3, 2006. The SHO affirmed the prior DHO order and provided additional reasoning related to the denial of TTD compensation:
 The Staff Hearing Officer finds that the requested period of disability is not causally related to the allowed conditions in this claim based on the report of Dr. Wachendorf dated 05/19/2006. *Page 13 
 {¶ 27} 13. Relator's further appeal was refused by order of the commission mailed November 24, 2006.
 {¶ 28} 14. Thereafter, relator filed the instant mandamus action in this court.
Conclusions of Law: {¶ 29} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. State ex rel. Pressley v. Indus. Comm.
(1967), 11 Ohio St.2d 141. A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. State ex rel. Elliott v. Indus. Comm. (1986), 26 Ohio St.3d 76. On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. State ex rel. Lewis v. Diamond FoundryCo. (1987), 29 Ohio St.3d 56. Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. State ex rel. Teece v. Indus. Comm. (1981),68 Ohio St.2d 165.
 {¶ 30} Relator makes the following three arguments. First, relator contends that Dr. Wachendorf's conclusion that the requested period of disability was not appropriate was based on speculation and was not based on any medical evidence. Relator contends that all of the medical evidence in the record supports the period of disability and that it was improper for Dr. Wachendorf to rely on the fact that he was terminated from his employment and that he had been working during the requested period of disability. Second, relator argues that a comparison of the October 2004 X-ray and the *Page 14 
December 2005 MRI demonstrates conclusively that relator's conditions have deteriorated rapidly. Third, relator contends that, even if the evidence reflects intermittent and brief efforts by relator to work in some capacity during the time period, the commission should have only excluded from its final determination the days when relator worked and should have granted his request for compensation for the days when he did not work. For the reasons that follow, the magistrate finds that relator has not demonstrated that the commission abused its discretion.
 {¶ 31} TTD compensation awarded pursuant to R.C. 4123.56 has been defined as compensation for wages lost where a claimant's allowed conditions cause a disability which prevents a return to the former position of employment. State ex rel. Ramirez v. Indus. Comm. (1982),69 Ohio St.2d 630.
 {¶ 32} In his first argument, relator essentially argues that Dr. Wachendorf's report cannot constitute some evidence upon which the commission could rely. Relator contends that Dr. Wachendorf did not accept the medical findings because all the evidence presented supported his request for disability compensation.
 {¶ 33} Relator is correct to assert that a nonexamining physician must accept the allowed conditions and must accept the findings of the treating physician. In the present case, there is no evidence that Dr. Wachendorf did not accept the physical findings in the record. As noted in the findings of fact, Dr. Wachendorf noted the medical evidence which was in the file. This included the X-ray, the MRI, the physical therapy notes, the office notes of Dr. Nobbs, the April 2006 report of Dr. Nobbs, as well as reports by Drs. Freeman and Lindquist. Dr. Wachendorf indicated that she accepted the findings and concluded that the requested period of compensation was not appropriate given: relator *Page 15 
was working in September 2005; Dr. Nobbs noted that relator's conditions were improving in October 2005; and relator's termination was not due to his allowed conditions.
 {¶ 34} Contrary to relator's arguments, the record does indeed show that he worked from the date of injury in October 2004 until the date he was terminated from his employment in September 2005. Further, Dr. Nobbs' office notes do indicate that, while relator maintained therapy, his symptoms improved. It was not an abuse of discretion for Dr. Wachendorf to conclude that the requested period of disability was not appropriate given there was no evidence upon which she could conclude that relator was terminated due to his allowed conditions and because Dr. Nobbs indicated that relator's conditions continued to improve. Relator is correct to assert that Dr. Wachendorf had no evidence from which she could have concluded that his termination was not related to his allowed conditions. However, Dr. Wachendorf still provided two reasons why, in her opinion, the requested period of TTD compensation was not related to the allowed conditions. Although relator contends that his difficulties with his left knee led to his termination, this evidence does not appear in the record until the June 2006 report of Dr. Nobbs in response to Dr. Wachendorf's report. Furthermore, relator continued to work during the period in which he requested disability compensation and has not presented any evidence that his allowed conditions prevented him from working. As such, the magistrate concludes that the report of Dr. Wachendorf does constitute some evidence upon which the commission could rely.
 {¶ 35} Relator next argues that a comparison of the October 2004 X-ray and the December 2005 MRI demonstrate conclusively that his conditions have deteriorated rapidly. The magistrate disagrees with relator's contention. *Page 16 
 {¶ 36} This court can take judicial notice of the fact that X-rays and MRIs provide doctors with distinctively different images of the particular part of the body examined. As such, X-rays and MRIs cannot be compared in the light relator requests. If relator would have had an MRI taken in October 2004, that MRI could have been compared to the December 2005 MRI and may or may not have shown significant deterioration of relator's conditions during that time period. However, comparisons of the X-ray and MRI do not, as relator suggests, provide conclusive evidence that his conditions have significantly deteriorated.
 {¶ 37} Lastly, relator contends that the commission should have awarded him TTD compensation during the requested period and simply excluded payment for those days when he actually worked. The magistrate finds that relator's argument is not well-taken.
 {¶ 38} In denying relator's request for TTD compensation, the SHO affirmed the prior DHO order and provided additional reasoning. As such, TTD compensation was denied to relator for the following reasons: (1) the C-84 of Dr. Nobbs was not credible because relator was working during the time that Dr. Nobbs certified that he was unable to work; and (2) the requested period of disability is not causally related to the allowed conditions. Relator cannot escape from the fact that he returned to work following his injury and continued to work until September 19, 2005 when he was terminated. Although relator contends that his termination was due to his allowed conditions, it is the commission that determines credibility and it was not an abuse of discretion for the commission to find that relator's self-serving statements were not credible. Further, the commission could have concluded from the evidence that relator was capable of returning to his former position of employment. In fact, relator did so until he was terminated. Last, *Page 17 
relator testified that he found other employment after he was terminated. As such, it was not an abuse of discretion for the commission to conclude that relator's lack of wages was not due to the allowed conditions, but was occasioned by other factors. As stated previously, it is the commission that determines the credibility and weight to be given evidence and, in the absence of an abuse of discretion, the commission's order should not be disturbed.
 {¶ 39} Based on the foregoing, it is this magistrate's conclusion that relator has not demonstrated that the commission abused its discretion in denying his request for TTD compensation and this court should deny his request for a writ of mandamus. *Page 1