DECISION
{¶ 1} Relator, Mid-Ohio Wood Products, Inc. ("relator"), commenced this original action requesting that this court issue a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate its order awarding respondent David L. Franks ("claimant") temporary total disability ("TTD") compensation beginning February 21, 2006, and to enter an order finding that the claimant voluntarily abandoned his employment.
 {¶ 2} Pursuant to Civ.R. 53 and Loc.R. 12(M) of the Tenth Appellate District, this matter was referred to a magistrate who issued a decision including findings of fact and conclusions of law. (Attached as Appendix A.) Therein, the magistrate concluded that the commission abused its discretion and recommended that this court issue a writ of mandamus ordering the commission to vacate its order finding that the claimant's job departure was injury-induced, and to issue a new order adjudicating whether the claimant's job departure was injury-induced. The commission filed objections to the magistrate's decision, and relator filed a memorandum opposing the objections. This cause is now before the court for a full review.
 {¶ 3} Recapitulated, the facts relevant to our determination are as follows. On April 21, 2005, the claimant was injured in the course and scope of his employment with relator. The claim was initially allowed for lumbosacral strain. On the date of injury, the claimant presented to a local hospital emergency room, where he was prescribed Flexeril and Vicodin and was excused from work until April 23, 2005. However, he has never returned to work. The next evidence of medical treatment in the stipulated record are the records of the claimant's treatment with chiropractor Craig Dyer on July 16, 2005. Dr. Dyer's July 20, 2005 report states that the claimant reported having experienced *Page 3 
persistent and severe back pain and leg numbness for the preceding three months. Dr. Dyer established a treatment plan.
 {¶ 4} On November 22, 2005, Garth Bennington, M.D., examined the claimant and ordered an MRI of the lumbar spine, which took place on November 30, 2005. The MRI revealed an L5-S1 broad-based central disc extrusion. Dr. Bennington treated the claimant with muscle relaxants and pain medications. On February 21, 2006, chiropractor Matthew Ellis examined the claimant, and his report indicates that the claimant's symptoms continued unabated, for which Dr. Ellis prepared a treatment plan. On March 3, 2006, Dr. Ellis completed a C-84 certifying a period of TTD from July 16, 2005 (the date of Dr. Dyer's examination) to an estimated return-to-work date of June 5, 2006. Dr. Ellis stated that the last date of examination was February 28, 2006. On May 11, 2006, the claimant moved for the allowance of the additional conditions of broad-based central disc extrusion L5-S1 and radicular syndrome of the lower limbs. On May 26, 2006, Dr. Ellis completed a second C-84 in which he certified a period of TTD from July 16, 2005 to an estimated return-to-work date of September 4, 2006, based on the conditions of lumbosacral sprain, broad-based central disc extrusion L5-S1, and radicular syndrome of the lower limbs.
 {¶ 5} Following a district hearing officer's consideration of the C-84s and the C-86, a staff hearing officer ("SHO") heard the matter on September 14, 2006. The SHO allowed the claim for broad-based central disc extrusion L5-S1, and stated that the claim was neither allowed nor disallowed for radicular syndrome of the lower limbs because there had not yet been a confirmatory EMG. The SHO granted TTD from February 21, 2006 (the date that Dr. Ellis first treated the claimant), to September 4, 2006, and *Page 4 
continuing upon submission of medical proof. The SHO stated that the decision as to TTD was based upon Dr. Ellis' C-84s. The SHO rejected relator's argument that the claimant had voluntarily abandoned his employment, citing the claimant's hearing testimony that his work-related injury prevented him from returning to work after the date of injury.
 {¶ 6} Relator instituted this original action, arguing that it is entitled to a writ of mandamus vacating the commission's order because the commission abused its discretion in refusing to find that the claimant voluntarily abandoned his employment. In his decision, the magistrate concluded that the commission abused its discretion in relying solely on the claimant's testimony as to the reason that he did not return to work. Citing voluntary retirement cases in which the Supreme Court of Ohio noted the presence or absence of corroborative medical evidence, the magistrate reasoned that, although the commission may rely on the claimant's testimony as to why he did not return to work, it may not rely on that evidence alone; rather, it must point to some medical evidence that corroborates the testimony. The magistrate found further support for his conclusion in Ohio Adm. Code4121-3-34(D)(1)(d), which concerns adjudication of applications for permanent total disability ("PTD") compensation. The magistrate recommended that this court grant a writ of mandamus ordering vacation of the commission's order, and readjudication because, in the magistrate's view, the record contains medical evidence upon which the commission could rely as corroborative of the claimant's testimony.
 {¶ 7} The commission filed several objections, which we will discuss in turn. First, the commission objects to the magistrate finding that, "[f]ollowing his April 21, 2005 hospital discharge, claimant did not seek medical treatment until July 16, 2005 * * *." ¶ 25, *Page 5 
infra. The commission argues that the finding should be that the stipulated evidence is silent as to whether the claimant sought treatment for his back between the date of injury and July 16, 2005. The commission's request finds support in the record; therefore, we sustain this objection and we will modify the magistrate's finding of fact accordingly.
 {¶ 8} Next, the commission objects to the magistrate's description of Dr. Ellis' C-84s, and argues that the description of these forms "should indicate that [the claimant] was incapable of returning to his former position of employment and of attending vocational rehabilitation" because this demonstrates the severity of the claimant's injury and corroborates that it was his industrial injury that rendered him unable to return to work. (Commission Objections, at 4.) Specifically, the commission points out that both C-84s indicate that the claimant was not a candidate for vocational rehabilitation due to the severity of his condition; and the second C-84 supports the motion to add the conditions of L5-S1 extruded disc and radicular syndrome to the claim, one of which was subsequently allowed, and the other of which the commission gave the claimant the opportunity to refile after obtaining a confirmatory EMG.
 {¶ 9} Upon review, we agree that Dr. Ellis states in both of the C-84s that the claimant is, as of that time, not a candidate for vocational rehabilitation "due to severity of condition * * *." Therefore, we will modify the magistrate's findings of fact to reflect that, on the dates of the C-84s, Dr. Ellis opined that the claimant was not a candidate for vocational rehabilitation. However, we need not modify the magistrate's findings to note that the C-84s state that the claimant could not return to his former position, because the magistrate has already included the fact that in each C-84 Dr. Ellis certified a period of *Page 6 
TTD. Accordingly, we will sustain the commission's second objection in part and overrule it in part.
 {¶ 10} Next, the commission argues that the findings of fact should include a finding that, because the SHO neither allowed nor disallowed the additional condition of radicular syndrome of the lower limbs, the claimant is free to reapply for the condition with additional medical evidence. We decline the commission's invitation to reach a legal conclusion not germane to the issues presented in relator's complaint. Accordingly, we overrule the commission's third objection.
 {¶ 11} Next, the commission lodges several objections to the magistrate's conclusions of law, which we will discuss out of order, and several of which we will combine, for ease of analysis. First, the commission objects to the magistrate's reliance upon Ohio Adm. Code4121-3-34(D)(1)(d), which concerns adjudication of applications for PTD. We agree that there is no authority for the proposition that the foregoing administrative code provision is applicable to adjudications of requests for TTD. Accordingly, this objection is sustained.
 {¶ 12} Next, the commission argues that this case should have been dismissed for failure to bring the action in the name of the state. However, the commission failed to raise this issue in its answer, brief, or at any other time. We decline to address it now, particularly because the commission has been on notice as to the nature of this action since it was served with the "Complaint for Writ of Mandamus," and it has suffered no prejudice from relator's failure to properly caption its complaint. For these reasons, we overrule this objection. *Page 7 
 {¶ 13} Finally, the commission objects to the magistrate's conclusion that its order is unsupported by "some evidence" because the SHO relied upon the claimant's testimony to conclude that his motivation for abandoning his job was related to his industrial injury, and that his departure was, therefore, involuntary. The commission maintains that there is no support in the law for this conclusion. The commission also argues that the medical evidence, including the presence of the disc extrusion now recognized in the claim, and reports of consistent severe pain, corroborate the claimant's testimony by revealing that his injury was clearly more severe than it appeared to be on the date of injury. The commission argues that there is no requirement that the SHO mention the corroborative aspects of the medical evidence, when the SHO specifically states that he relied upon the C-84s and the claimant's testimony. We agree and sustain the remaining objections on that basis.
 {¶ 14} "[T]emporary total disability is defined as a disability which prevents a worker from returning to his former position of employment."State ex rel. Ramirez v. Indus. Comm. (1982), 69 Ohio St.2d 630, 23 O.O.3d 518, 433 N.E.2d 586, syllabus. "A worker is prevented by an industrial injury from returning to his former position of employment where, but for the industrial injury, he would return to such former position of employment. However, where the employee has taken action that would preclude his returning to his former position of employment, even if he were able to do so, he is not entitled to continued temporary total disability benefits since it is his own action, rather than the industrial injury, which prevents his returning to such former position of employment." State ex rel. Jones Laughlin Steel Corp. v. Indus.Comm. (1985), 29 Ohio App.3d 145, 29 OBR 162, 504 N.E.2d 451, syllabus. *Page 8 
 {¶ 15} Thus, "[a] claimant's separation from employment is classified as either voluntary or involuntary. * * * The latter includes an injury-induced departure and does not affect TT[D] eligibility."State ex rel. Wiley v. Whirlpool Corp., 100 Ohio St.3d 110,2003-Ohio-5100, 796 N.E.2d 925, ¶ 14. However, "a proper analysis must look beyond the mere volitional nature of a claimant's departure. The analysis must also consider the reason underlying the claimant's decision to retire. * * * This broader focus takes into consideration a claimant's physical condition. It recognizes the inevitability that some claimants will never be medically able to return to their former positions of employment, and thus dispenses with the necessity of a claimant's remaining on the company roster in order to maintain temporary total benefit eligibility." State ex rel. Rockwell Internatl.v. Indus. Comm. (1988), 40 Ohio St.3d 44, 46, 531 N.E.2d 678.
 {¶ 16} Moreover, "[t]he voluntary nature of [the claimant's] abandonment is a factual question which revolves around [the claimant's] intent at the time he retired. The Supreme Court of Ohio has directed:`All relevant circumstances existing at the time of the alleged abandonment should be considered. * * * The presence of such intent, being a factual question, is a determination for the commission.`"State ex rel. Williams v. Coca-Cola Ent., Franklin App. No. 04AP-270, 2005-Ohio-5085, ¶ 9, quoting State ex rel. Diversitech Gen.Plastic Film Div. v. Indus. Comm. (1989), 45 Ohio St.3d 381, 383,544 N.E.2d 677.
 {¶ 17} Additionally, it is well-settled that the claimant does not have a burden of disproving a voluntary abandonment of the former position of employment in order to show entitlement to TTD compensation.State ex rel. College of Wooster v. Gee, Franklin App. No. 03AP-389,2004-Ohio-1898, ¶ 38, citing State ex rel. Superior's Brand Meats, *Page 9 Inc. v. Indus. Comm., 78 Ohio St.3d 409, 1997-Ohio-9, 678 N.E.2d 565. "The burden of proof with respect to voluntary abandonment falls upon the employer * * * The claimant's burden is to persuade the commission that there is a proximate causal relationship between his or her work-connected injuries and disability, and to produce medical evidence to this effect. State ex rel. Quarto Mining Co. v. Foreman,79 Ohio St.3d 78, 83, 1997-Ohio-71, 679 N.E.2d 706. * * * Where a claimant establishes a prima facie causal connection based upon medical evidence, the burden should then properly fall upon the employer to raise and produce evidence on its claim that other circumstances independent of the claimant's allowed conditions caused him to abandon the job market. Id."
 {¶ 18} We have carefully reviewed the cases that the magistrate cites in his decision, and we find nothing in them that holds that there must be objective medical evidence corroborating a claimant's testimony regarding his motivation for abandonment of his employment. On the contrary, as noted hereinabove, the commission must make a factual determination, based upon all of the surrounding circumstances, whether the motivation for the claimant's departure was, in whole or in part, the allowed conditions for which the claimant has already discharged his burden of proof. Here, the commission did so, and did not abuse its discretion in crediting the claimant's testimony, particularly in light of the office notes from Drs. Bennington, Ellis, and Dyer, which indicate that the claimant reported suffering severe, constant back pain since the date of injury. The commission is the exclusive evaluator of weight and credibility of the evidence. State ex rel. LTV Steel Co. v.Indus. Comm., 88 Ohio St.3d 284, 2000-Ohio-328, 725 N.E.2d 639. *Page 10 
For these reasons, we sustain the commission's objections insofar as they challenge the magistrate's conclusion that the commission abused its discretion.
 {¶ 19} Having undertaken a review of the commission's objections and relator's memorandum in opposition thereto, considered the arguments of all of the parties, and independently appraised the evidence, we sustain in part and overrule in part the commission's objections, we adopt the magistrate's findings of fact with modifications as indicated herein, we reject the magistrate's conclusions of law and substitute them with our own, and we deny the requested writ of mandamus.
Objections sustained in part and overruled in part; writ of mandamusdenied.
KLATT and FRENCH, JJ., concur.
 APPENDIX A *Page 11 MAGISTRATE'S DECISION IN MANDAMUS {¶ 20} In this original action, relator, Mid-Ohio Wood Products, Inc. ("relator" or "Mid-Ohio"), requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order awarding respondent David L. Franks ("claimant") temporary total disability ("TTD") compensation beginning February 21, 2006, and to enter an order finding that claimant voluntarily abandoned his employment.
Findings of Fact: {¶ 21} 1. On April 21, 2005, claimant sustained an industrial injury while employed as a laborer for relator, a state-fund employer. The industrial claim was initially allowed for "lumbosacral strain" and was assigned claim number 05-335727.
 {¶ 22} 2. On the date of injury, claimant presented to a hospital emergency department. Following a medical evaluation, claimant was discharged that same day. Hospital records indicate that he was excused from work "to 4/23/2005." He received a *Page 12 
prescription for "Flexeril 10 mg." to be taken for muscle spasms. According to hospital records, he also received a prescription for "Vicodin" to relieve pain.
 {¶ 23} 3. Prior to April 21, 2005, claimant had sustained an earlier industrial injury while employed with Mid-Ohio. Apparently, in that claim, claimant underwent carpal tunnel surgery prior to the April 21, 2005 industrial injury at issue here.
 {¶ 24} 4. Claimant did not return to work at Mid-Ohio following his April 21, 2005 industrial injury.
 {¶ 25} 5. Following his April 21, 2005 hospital discharge, claimant did not seek medical treatment until July 16, 2005, when he was initially examined by chiropractor Craig A. Dyer, D.C., who was an employee of the Mantonya Chiropractic Center. Following the July 16, 2005 examination, Dr. Dyer prepared a report, dated July 20, 2005, stating:
 Mr. Franks indicated his major complaints developed as a result of a job related injury on 04/21/2005 and have persisted for 3 months. Mr. Franks is experiencing severe low back pain and radiating leg numbness. The symptoms are constant. Activities that aggravate the symptoms are bending, getting up [and] down, increased activity in general and lifting. Mr. Franks injured himself on 4/21/2005 while at work. He was moving a steel cart loaded with lumber. He was to move it by himself by leaning backwards into the cart and pushing off on the ground to get it moving. The cart weighed at least several hundred pounds to a thousand pounds when loaded. This activity was performed on a daily basis and was one of the normal duties of Mr. Franks once the cart was loaded fully. On 4/21/2005, Mr[.] Franks was attempting to move the loaded cart when he felt a sharp pain in his lower back. He had pushed his tailbone/low back onto the cart and was pushing with his legs to move the cart when the pain began. This mechanism of injury caused a sprain/-strain injury to occur because of the extreme weight and poor technique for moving the fully loaded carts. Mr. Franks *Page 13 
indicates that this was the only way to move the fully loaded carts since this was to be done individually.
 Mr. Franks left work to go to Licking Memorial Hospital for treatment of his injury. He was treated and examined at the ER at Licking Memorial Hospital. Pain medication was given to Mr. Franks for his injury. He was told to follow up with his family doctor. Later that night visible bruising appeared on his lower back where the cart made contact with his body. Mr. Franks has only been given pain medication for his condition. Temporary relief has been apparent, but the symptoms are worsening with time. No other treatment has been given or sought prior to presentation at this office. Radiating leg numbness has also become apparent in the days since his injury as well as: loss of balance, depression, and sleeping trouble. Mr. Franks sleeps only 1-2 hours at a time due to his worsening pain.
 * * *
 TREATMENT PLAN
 Symptoms: low back pain, radiating leg numbness (diagnosis: 846.0 sprain/strain, lumbosacral)[.] During the relief care phase (acute), which will begin 7/16/2005 and last for approximately 4 weeks, the patient should be treated 12 times. Each visit will include the following treatment: spinal manipulation, ems, cryotherapy. The goals during this phase of care are to: decrease pain, decrease swelling/inflammation, decrease muscle spasm, increase range of motion, increase ability to perform activities of daily living, increase function, increase strength, increase flexibility, improve alignment. An active care program is to be implemented as soon as the swelling has reduced. Stretching exercises are to be given and performed at home to Mr. Franks in addition to the strengthening exercises. The strengthening exercises are to be performed beginning the second week of care and to be performed at this office 3X/week for two weeks beginning on the 7th treatment visit.
 * * *
 FINAL COMMENTS
 The current prognosis for this patient is very good. In my professional opinion, the symptoms presented by Mr. Franks *Page 14 
on 7/16/2005 are a direct result of the accident chronicled in this report.
 {¶ 26} 6. Although claimant was treated by Dr. Dyer on several occasions after July 16, 2005, Dr. Dyer never provided a work excuse nor did he ever opine that claimant was unable to return to work.
 {¶ 27} 7. On November 22, 2005, claimant was initially examined by Garth Bennington, M.D., for treatment purposes.
 {¶ 28} 8. On November 30, 2005, at Dr. Bennington's request, claimant underwent an MRI of the lumbar spine. The radiologist's report of the MRI states:
 L5-S1 demonstrates a broad-based central disc extrusion with some slight caudad subligamentous extension. Some generalized annulus bulging is also seen and is slightly asymmetrical with some narrowing of the neural foramen on the right compared to the left. Some lateral recess stenosis is seen however exiting nerve roots at L5-S1 show no encroachment.
 {¶ 29} 9. On January 9, 2006, following another office visit, Dr. Bennington wrote:
 * * * [Patient] has 3-4 months of low back pain. Seems to bother his hip and legs at times. Only recent injuries are [sic] include falling down steps and heavy lifting. Only specific incident was in [A]pril moving a steel cart — 2000 lbs and went to hospital after pulling back. Sent home with muscle relaxants and pain meds. * * *
 {¶ 30} 10. On February 21, 2006, claimant returned to the Mantonya Chiropractic Center. Because Dr. Dyer was no longer employed there, claimant saw chiropractor Matthew F. Ellis, D.C. Following the February 21, 2006 examination, Dr. Ellis wrote:
 TREATMENT PLAN *Page 15 
 Symptoms: low back pain, radiating leg numbness (diagnosis: 846.0 sprain/strain, lumbosacral)[.] During the sub-acute care phase, which will begin 02/21/2006 and last for approximately 4 weeks, the patient should be treated 12 times. Each visit will include the following treatment: spinal manipulation, ems, cryotherapy. The goals during this phase of care are to: decrease pain, decrease swelling/inflammation, decrease muscle spasm, increase range of motion, increase ability to perform activities of daily living, increase function, increase strength, increase flexibility, improve alignment. Request 12 visits of physical therapy in our office to increase range of motion, decrease muscle tightess [sic] and increase endurance, at 3 times a week for 4 weeks.
 {¶ 31} 11. On March 3, 2006, Dr. Ellis completed a C-84. The C-84 form presents the following query: "List ICD-9 Codes with narrative diagnosis(es) for allowed conditions being treated which prevent return to work." In response to the query, Dr. Ellis wrote: "846.0 Sprain Lumbosacral." On the C-84, Dr. Ellis certified a period of TTD beginning July 16, 2005 (the date of Dr. Dyer's initial examination) to an estimated return-to-work date of June 5, 2006. In response to the form's further query, Dr. Ellis indicated that February 28, 2006 was the date of last examination.
 {¶ 32} 12. On May 11, 2006, claimant moved for the allowance of additional conditions in the claim.
 {¶ 33} 13. On May 26, 2006, Dr. Ellis completed another C-84 on which he certified TTD from July 16, 2005 to an estimated return-to-work date of September 4, 2006. In response to the form's query asking for a list of the allowed conditions being treated which prevent a return to work, Dr. Ellis wrote: "846.0 Lumbosacral sprain/strain[,] 722.2 Broad-based central disc extrusion L5-S1[,] 724.4 Radicular Syndrome of lower limbs." *Page 16 
 {¶ 34} 14. On July 20, 2006, a district hearing officer ("DHO") heard claimant's motion for the allowance of additional conditions and request for TTD compensation. Following the hearing, the DHO issued separate orders. One of the orders denied the motion for the allowance of additional conditions. The other order denied the request for TTD compensation.
 {¶ 35} 15. Claimant administratively appealed the July 20, 2006 orders of the DHO.
 {¶ 36} 16. On September 14, 2006, a staff hearing officer ("SHO") heard the appeals from the DHO's orders of July 20, 2006. Following the hearing, the SHO issued separate orders.
 {¶ 37} One of the orders vacated the DHO's denial of the additional claim allowance and additionally allowed the claim for "broad-based central disc extrusion L5-S1." The order further states: "The denial of the condition "RADICULAR SYNDROME LOWER LIMBS is vacated. This condition is neither granted or denied at this time but is dismissed due to the lack of EMG testing to confirm or rule out the diagnosis." (Emphasis sic.)
 {¶ 38} The other SHO's order vacated the DHO's denial of TTD compensation. That SHO's order states:
 Temporary total compensation is granted from 02/21/2006 (the date of the first treatment by Dr. Ellis) to 09/04/2006, and to continue upon submission of medical proof. Disability is based on the C-84's from Dr. Ellis (03/03/2006 and 05/26/2006) and the additional condition granted by Staff Hearing order of 09/14/2006.
 Temporary total disability compensation is denied from 07/16/2005 through 02/20/2006 based on a lack of persuasive *Page 17 
medical evidence. Dr. Ellis did not see the injured worker until 02/21/2006. Dr. Dyer saw the injured worker from 07/16/2005 through 07/30/2005 but makes no mention in his office notes or 07/20/2005 report of disability. The injured worker then saw Dr. Bennington from 11/22/2005 through 03/09/2006, yet nowhere does Dr. Bennington state the injured worker is unable to work due to the allowed injuries. In light of this history and evidence, Dr. Ellis' opinion of disability from 07/16/2005 through 02/20/2006 is not found persuasive.
 The employer's argument of a voluntary abandonment is not found persuasive. The injured worker testified that he never returned to work after 04/21/2005 because he was unable to due to his injury. Leaving or quitting work due to an allowed injury is not a voluntary abandonment but an involuntary departure akin to a retirement due to an allowed injury. Further, the employer has submitted no written proof of a termination, the reasons for such a termination, or a written policy to show the employee was put on notice of the violation claimed and was aware it would lead to termination, as required by the [State ex rel. Louisiana-Pacific Corp. v. Indus. Comm. (1995), 72 Ohio St.3d 401] case.
 {¶ 39} 17. The SHO's order of September 14, 2006, indicates that "Parkinson" appeared as a witness for the employer at the hearing.
 {¶ 40} 18. The record contains a handwritten memorandum dated June 1, 2005, on Mid-Ohio stationary. The memorandum, signed by "Deanna Parkinson," states:
 After being off work for 11 weeks for carpel tunnel surgery on both wrists, David Franks returned to work on 3-29-05. The 1st week he worked 32 hrs. 2nd week 8 hrs. 3rd
week 14 ½ hrs and 4th week 12 hrs.
 His girlfriend came in and handed Nancy a paper from Licking Memorial Hospital stating that he had hurt his back. (Which he did not hurt here).
 David's last day of work was 4-21-05. His girlfriend came in for his check. I asked what was up with David and she said "Uh ___ I think he done quit."
(Emphasis sic.) *Page 18 
 {¶ 41} 19. At oral argument, this magistrate was informed by relator's counsel that the "Parkinson" who appeared as a witness at the SHO hearing was Jay Parkinson who is the brother of Deanna Parkinson.
 {¶ 42} 20. Relator administratively appealed both SHO's orders of September 14, 2006.
 {¶ 43} 21. On October 12, 2006, another SHO mailed an order refusing relator's administrative appeal from the SHO's order of September 14, 2006, that granted the additional claim allowance.
 {¶ 44} 22. On March 22, 2007, another SHO mailed an order refusing relator's administrative appeal from the SHO's order of September 14, 2006, that awarded TTD compensation.
 {¶ 45} 23. Earlier, in December 2006, pursuant to R.C. 4123.512, relator appealed the SHO's refusal order of October 12, 2006 to the Licking County Court of Common Pleas. That action remains pending.
 {¶ 46} 24. On June 7, 2007, relator, Mid-Ohio Wood Products, Inc., filed this original action.
Conclusions of Law: {¶ 47} The main issue is whether the commission can exclusively rely upon claimant's testimony in determining that his post-injury failure to return to work at Mid-Ohio was injury-induced and thus involuntary under the standard set forth in State ex rel. Rockwell Internatl. v. Indus.Comm. (1988), 40 Ohio St.3d 44, and its progeny.
 {¶ 48} Finding that the claimant's testimony alone fails to constitute the some evidence needed to support the commission's determination of an injury-induced *Page 19 
departure from employment, it is the magistrate's decision that this court issue a writ of mandamus, as more fully explained below.
 {¶ 49} Analysis begins with a brief review of three decisions of the Supreme Court of Ohio addressing the question of whether a claimant's retirement from his employment was voluntary or involuntary. Obviously, in the instant case, there was no retirement in the usual sense of the word. However, it is undisputed that the instant claimant quit his job by simply failing to return to his job. Clearly, the retirement cases to be addressed below set forth the standard applicable to this case.
 {¶ 50} Before addressing the three decisions of the Supreme Court of Ohio involving retirement, the magistrate notes that there is no evidence that claimant was fired for violation of a written work rule and, thus, contrary to what might be suggested in the SHO's order of September 14, 2006, State ex rel. Louisiana-Pacific Corp. v. Indus.Comm. (1995), 72 Ohio St.3d 401, and its progeny are not germaine to this action.
 {¶ 51} Specifically, what is at issue is the following portion of the SHO's order:
 The employer's argument of a voluntary abandonment is not found persuasive. The injured worker testified that he never returned to work after 04/21/2005 because he was unable to due to his injury. Leaving or quitting work due to an allowed injury is not a voluntary abandonment but an involuntary departure akin to a retirement due to an allowed injury. * * *
 {¶ 52} In Rockwell, the court pronounced:
 Neither [State ex rel. Ashcraft v. Indus. Comm. (1987), 34 Ohio St.3d 42] nor [State ex rel. Jones Laughlin Steel Corp. v. Indus. Comm. (1985), 29 Ohio App.3d 145] states that any abandonment of employment precludes payment of temporary total disability compensation; they provide that only voluntary abandonment precludes it. While a distinction between voluntary and involuntary abandonment was contemplated, the terms until today have remained undefined. *Page 20 
We find that a proper analysis must look beyond the mere volitional nature of a claimant's departure. The analysis must also consider the reason underlying the claimant's decision to retire. We hold that where a claimant's retirement is causally related to his injury, the retirement is not "voluntary" so as to preclude eligibility for temporary total disability compensation.
Id. at 46. (Emphasis sic.)
 {¶ 53} In Rockwell, the claimant sustained a low back injury within the course of his employment with Rockwell International. Following receipt of TTD compensation, his attending physician, Dr. Salinas, released him to return to light duty work. Evidence from the employer as to the physical requirements of the claimant's job indicated that the claimant could not return to that job under Dr. Salinas' restrictions. When the claimant moved to reactivate his claim requesting TTD compensation, the commission awarded TTD compensation and also determined that the claimant's retirement was due to his industrial injury.
 {¶ 54} Upholding the commission's decision on the job abandonment issue, the Rockwell court explained:
 The determination of disputed factual situations is within the final jurisdiction of the commission, subject to correction by mandamus only upon a showing of an abuse of discretion. State, ex rel. Allied Wheel Products, Inc., v. Indus. Comm. (1956), 166 Ohio St. 47[.] * * * There has been no abuse of discretion, however, where the record contains some evidence to support the commission's decision. State, ex rel. Burley, v. Coil Packing, Inc. (1987), 31 Ohio St. 3d 18[.] * * * Having defined "voluntary" retirement, we must now determine whether there is "some evidence" to support the commission's determination that appellant did not voluntarily retire.
 The commission relied primarily on three pieces of evidence: (1) the statement of the plant personnel officer indicating that *Page 21 
appellant tried to return to a job with lighter duties, but none was available; (2) appellant's ability to continue to work, following a heart-bypass operation, until his industrial injury; and (3) the May 16, 1984 report of commission specialist Dr. Rogelio Sanchez, who found it highly improbable that appellant would ever return to substantially remunerative employment. We hold the above constitutes "some evidence" supporting the commission's determination that appellant's retirement was causally related to his industrial injury and thus was not "voluntary."
Id. at 46.
 {¶ 55} On the same day that Rockwell was decided, the Supreme Court of Ohio also decided State ex rel. Scott v. Indus. Comm. (1988),40 Ohio St.3d 47, a case that applied the Rockwell standard. In Scott, after noting that the determination of disputed factual situations is within the final jurisdiction of the commission, the court stated that the question before it is whether there was some evidence supporting the commission's determination that the claimant voluntarily retired.
 {¶ 56} In Scott, the commission had denied TTD compensation to the claimant on grounds that he had voluntarily retired. The claimant then filed for a writ of mandamus in this court. After this court denied the writ, the claimant appealed as of right to the Supreme Court of Ohio. In affirming this court's judgment, the Supreme Court of Ohio stated:
 In affirming the commission's findings herein, the appellate court emphasized three factors: (1) an apparent absence of medical treatment for appellant for eighteen months, (2) appellant's receipt of unemployment compensation benefits from June 23, 1984 through March 23, 1985, and, (3) appellant's receipt of Social Security retirement benefits. The court stated that "taken together, * * * these factors collectively constituted some evidence supporting a finding by the Industrial Commission of a voluntary retirement by relator." We agree. *Page 22 
Id. at 48.
 {¶ 57} In State ex rel. White Consolidated Industries v. Indus.Comm. (1990), 48 Ohio St.3d 17, the claimant sustained an industrial injury and began receiving TTD compensation. In April 1986, while still receiving TTD compensation, the claimant retired. He then asked the commission to determine whether he should receive TTD compensation subsequent to his retirement. Citing the claimant's affidavit and a report from Dr. Boumphrey, the commission ordered compensation to continue. Thereafter, the self-insured employer filed for a writ of mandamus in this court. After this court denied the writ, the employer appealed as of right to the Supreme Court of Ohio.
 {¶ 58} In reversing this court's judgment, the Supreme Court of Ohio, in White, explained:
 The voluntary nature of retirement is a factual question within the commission's final jurisdiction. State, ex rel. Haines, v. Indus. Comm. (1972), 29 Ohio St. 2d 15[.] * * * So long as the commission's decision is supported by "some evidence," there has been no abuse of discretion and mandamus will not lie. State, ex rel. Burley, v. Coil Packing, Inc. (1987), 31 Ohio St.3d 18[.] * * * Upon review, we find that Dr. Boumphrey's February 22, 1985 report and the claimant's affidavit are "some evidence" supporting the commission's determination that claimant's retirement was not voluntary.
Id. at 18.
 {¶ 59} Clearly, Rockwell, Scott and White do not foreclose the proposition being advanced here. Moreover, in all three cases, medical evidence was viewed by the commission and the Supreme Court of Ohio as critical to the determination of whether a retirement was injury-induced. *Page 23 
 {¶ 60} While TTD compensation is the issue in the instant case, the magistrate finds instructive one of the commission's guidelines for the adjudication of applications for permanent total disability ("PTD") compensation. Ohio Adm. Code 4121-3-34(D)(1)(d) states:
 If, after hearing, the adjudicator finds that the injured worker voluntarily removed himself from the work force, the injured worker shall be found not to be permanently and totally disabled. If evidence of voluntary removal or retirement is brought into issue, the adjudicator shall consider evidence that is submitted of the injured worker's medical condition at or near the time of removal/retirement.
 {¶ 61} If medical evidence is essential to the consideration of whether an injured worker has voluntarily removed himself from the workforce in a PTD adjudication, it follows that medical evidence is essential to the consideration of whether a job departure is injury-induced in a TTD adjudication. See, generally, State ex rel.Bozeman v. Unisource Corp., Franklin App. No. 01AP-1484, 2003-Ohio-747 (the commission misconstrued the PTD applicant's treatment record in determining that his retirement was voluntary).
 {¶ 62} The question of whether a retirement or job departure is injury-induced must focus upon the claimant's motivation for leaving his job. Given the above authorities, it is clear to this magistrate that the claimant's motivation for leaving his job must be supported by medical evidence relevant to his decision to abandon the employment. It follows then that the commission must find support in the medical evidence of record if it is to rely upon the claimant's testimony that it was the industrial injury that motivated his decision to retire or to abandon his job. Under State ex rel. Noll v. Indus. Comm. (1991),57 Ohio St.3d 203, the commission must also specify what *Page 24 
medical evidence has been relied upon to support the claimant's testimony along with a brief explanation of its reasoning.
 {¶ 63} This magistrate disagrees with relator's contention that the commission cannot find claimant's job departure to be injury-induced in the absence of a medical opinion that he was unable to return to his former position of employment after his work excuse expired on April 22, 2005. Relator's reliance upon State ex rel. Earls v. Indus. Comm.,97 Ohio St.3d 264, 2002-Ohio-6320, is misplaced.
 {¶ 64} In Earls, the court reiterated well-established law when it stated that a key requirement of TTD eligibility is "the presence of medical evidence substantiating a causal relationship between the allowed conditions and the alleged inability to return to the relevant position of employment." Id. at ¶ 8.
 {¶ 65} Citing the above-quoted pronouncement by the Earls court, relator asserts that "[t]he same standard should apply to the question of whether Franks voluntarily abandoned his employment." (Reply brief at 4.) The magistrate disagrees with relator's assertion.
 {¶ 66} A distinction needs to be made between those cases that have decided what constitutes some evidence to support a finding that a claimant is totally disabled by an allowed condition and those cases that have decided what constitutes some evidence to support a determination of whether a retirement or job departure is injury-induced.
 {¶ 67} As previously noted, on the issue of job abandonment, the focus is upon the claimant's motivation for his job departure. It is certainly conceivable that a claimant's job departure might not immediately generate a doctor's opinion of disability *Page 25 
yet the claimant is induced by the injury to depart from his employment. That is, an injury-induced job departure is not necessarily equatable to an inability to perform the job at the time of the departure.
 {¶ 68} Here, the record shows that in April 2005, claimant was told at the time of his hospital evaluation that he had sustained a lumbosacral sprain that would be expected to heal within a brief period of time. Yet, according to Dr. Dyer's report, claimant's back pain persisted to such an extent that he sought additional medical treatment from Dr. Dyer on July 16, 2005, some three months after the date of injury. Not until the results of the November 30, 2005 MRI were reported was it clear that claimant had sustained a much more serious injury than originally believed.
 {¶ 69} The point of this brief analysis of the medical evidence is to indicate that, contrary to relator's assertion, the record does contain medical evidence that the commission could conceivably rely upon to support claimant's testimony. That the commission abused its discretion does not compel a full writ of mandamus ordering the commission to enter a finding of a voluntary abandonment of employment as relator claims here.
 {¶ 70} Citing State ex rel. Elyria Foundry Co. v. Indus. Comm. (1998),82 Ohio St.3d 88, the commission claims that this mandamus action is not ripe for judicial review because relator is pursuing an R.C. 4123.512
appeal to a common pleas court. The commission's reliance uponElyria Foundry is misplaced.
 {¶ 71} In Elyria Foundry, the employer, pursuant to R.C. 4123.512, appealed the allowance of the claim to the Lorain County Court of Common Pleas. The claim had been only allowed by the commission for silicosis and it was this claim allowance that *Page 26 
the employer challenged in the common pleas court. During the pendency of the common pleas court action, the employer initiated a mandamus action challenging the commission's award of TTD compensation. Noting that the allowance of the entire claim was in dispute in the common pleas court, the Elyria Foundry court held that the mandamus action was not ripe for review.
 {¶ 72} Here, the claim was initially allowed for "lumbosacral strain" and then subsequently allowed for "broad-based central disc extrusion L5-S1." Relator's R.C. 4123.512 action in the common pleas court does not challenge the "lumbosacral strain" which is the sole basis for Dr. Ellis' certification of TTD in his March 3, 2006 C-84. The SHO, in his September 14, 2006 order, awarded TTD compensation beginning February 21, 2006 based upon two C-84s from Dr. Ellis dated March 3 and May 26, 2006. Thus, even if relator were to succeed in its common pleas court action, Dr. Ellis' March 3, 2006 certification of TTD based solely upon the lumbosacral strain would not be eliminated from evidentiary consideration. While Dr. Ellis' May 26, 2006 C-84 would be eliminated from evidentiary consideration if the subsequent claim allowance were successfully challenged in the common pleas court, that would not undermine the TTD award based upon Dr. Ellis' March 3, 2006 C-84.
 {¶ 73} Given the above analysis explaining the critical difference between Elyria Foundry and the instant case, it is clear that this mandamus action is not barred by the ripeness doctrine set forth inElyria Foundry.
 {¶ 74} Citing State ex rel. Quarto Mining Co. v. Foreman (1997),79 Ohio St.3d 78, the commission claims here that relator failed to raise administratively the defense of a voluntary abandonment of employment. The commission's claim lacks merit. The *Page 27 
SHO's order of September 14, 2006 addresses "[t]he employer's argument of a voluntary abandonment" even though that argument is not specifically set forth in the order. Thus, the SHO's order itself contradicts the commission's position here.
 {¶ 75} The magistrate also disagrees with the commission's suggestion that its abuse of discretion, as explained above, does not require a writ of mandamus because allegedly relator failed to administratively present a prima facie case for a voluntary abandonment. Contrary to the commission's suggestion, relator's claim of a voluntary abandonment does not rest solely upon the reported remarks of his girlfriend as indicated in the June 1, 2005 handwritten memorandum.
 {¶ 76} Accordingly, it is the magistrate's decision that this court issue a writ of mandamus ordering the commission to vacate its order finding that claimant's job departure was injury-induced and, in a manner consistent with this magistrate's decision, enter a new order determining whether the job departure was injury-induced. *Page 1