DECISION
{¶ 1} Relator, Ford Motor Company ("Ford"), has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order that awarded temporary total disability ("TTD") compensation to respondent Veada R. Irby ("claimant") after finding that *Page 2 
her retirement was involuntary in nature, and ordering the commission to deny claimant TTD compensation.
 {¶ 2} This matter was referred to a court-appointed magistrate pursuant to Civ. R. 53(C) and Loc. R. 12(M) of the Tenth District Court of Appeals. The magistrate issued a decision, including findings of fact and conclusions of law, and recommended that this court deny Ford's writ of mandamus. (Attached as Appendix A.) Ford has filed objections to the magistrate's decision.
 {¶ 3} Ford raises three objections. We will address all of them together, as they are related. Ford first argues that the office note of Dr. R. Scott Jolson and the testimony of claimant at the staff hearing did not constitute some evidence to support the commission's order. In its second objection, Ford argues that the magistrate did not apply the correct standard to determine whether there was some evidence to support the commission's order. In its third objection, Ford argues that the magistrate erred when it allowed the commission complete discretion in making the factual determination whether claimant's retirement was voluntary or involuntary.
 {¶ 4} With regard to Ford's first objection, Ford contests the commission's reliance upon Dr. Jolson's office note and claimant's testimony at the staff hearing. Dr. Jolson's office note indicates that claimant was retiring at the end of the year, and she hoped that getting off the concrete floor at her job would make a "big difference" in her pain resulting from her injury. Ford believes this evidence was not persuasive to demonstrate claimant retired due to her allowed conditions because Dr. Jolson wrote this report six months prior to claimant's retirement, claimant worked two months beyond the time she told Dr. Jolson she was going to retire, and Dr. Jolson never recommended that *Page 3 
claimant retire or suggested she was unable to perform her job duties. With regard to claimant's staff hearing testimony, claimant stated that her allowed conditions interfered with her ability to continue working. Ford argues that this testimony was unpersuasive because claimant gave the testimony four years after her retirement, and the testimony did not indicate that she was unable to continue her position at Ford as a result of the allowed conditions in her claim.
 {¶ 5} We agree with Ford that the above evidence, on its face, was not definitive. However, the commission chose to interpret the above evidence to support such a finding and conclude claimant's allowed conditions made it necessary for her to retire. The voluntary nature of claimant's abandonment of employment is a factual question that revolves around claimant's intent at the time she retired. See State ex rel.Williams v. Coca-Cola Ent, Inc., Franklin App. No. 04AP-1270, 2005-Ohio-5085, at ¶ 9. The Supreme Court of Ohio has directed that the presence of such intent is a factual question for the commission to determine. State ex rel. Diversitech Gen. Plastic Film Div. v. Indus.Comm. (1989), 45 Ohio St.3d 381, 383. Although Ford argues that the commission wrongly relied upon claimant's testimony at the hearing before the staff hearing officer ("SHO"), this court has before found that it is within the commission's discretion to credit a claimant's testimony that his or her motivation for the departure from the job was based upon the allowed conditions, as the commission is the sole evaluator of credibility. See State ex rel. Mid-Ohio Wood Products, Inc.v. Indus. Comm., Franklin App. No. 07AP-478, 2008-Ohio-2453, at ¶ 18. Furthermore, we also found in Mid-Ohio Wood Products that there is nothing that requires there be objective medical evidence corroborating a claimant's testimony regarding his or her motivation for abandonment of employment. Id. *Page 4 
Notwithstanding, we noted in Mid-Ohio Wood Products that there were various doctors' office notes indicating claimant reported suffering pain that supported claimant's testimony regarding her motivation for abandoning employment.
 {¶ 6} In the present case, the commission was within its discretion to believe claimant's testimony, and we have no reason to find an abuse of that discretion. As explained above, the commission was not required to cite any medical evidence to buttress her testimony. Nevertheless, similar to Mid-Ohio Wood Products, the commission here could have relied upon Dr. Jolson's office notes to support claimant's testimony. Dr. Jolson's notes indicated that claimant was suffering pain that was exacerbated by her employment, and she hoped retiring would relieve that pain.
 {¶ 7} Although Ford argues in its third objection that our decision has given the commission "complete" discretion to determine whether a retirement is voluntary or involuntary, we disagree with that characterization. While it is true that the determination of disputed factual situations is within the final jurisdiction of the commission, such is subject to correction by mandamus upon a showing of an abuse of discretion. See State ex rel. Allied Wheel Products, Inc. v. Indus.Comm. (1956), 166 Ohio St. 47. There is no abuse of discretion, however, where the record contains some evidence to support the commission's decision, as we have found here. See State ex rel. Burley v. CoilPacking, Inc. (1987), 31 Ohio St.3d 18. Thus, although we have not afforded the commission unbridled discretion, we have given it high deference in making credibility and factual determinations, as required by our standard of review.
 {¶ 8} Furthermore, Ford contends in its second objection that the magistrate erred when it found it sufficient that claimant's decision to retire was based "in part" upon *Page 5 
her allowed conditions. Ford contends that the standard is whether the allowed conditions fully prevented claimant from continuing to engage in employment. However, in Mid-Ohio Wood Products we stated that "the commission must make a factual determination, based upon all of the surrounding circumstances, whether the motivation for the claimant's departure was, in whole or in part, the allowed conditions for which the claimant has already discharged his burden of proof." (Emphasis added.) Id., at ¶ 18. See, also, State ex rel. Reliance Elec. Co. v.Stevens, Franklin App. No. 03AP-402, 2004-Ohio-1779 (affirming hearing officer's finding that claimant's election to retire did not preclude payment of TTD because claimant's decision to retire was not a voluntary abandonment of employment, as it was predicated "in part" upon his injury as well as the fact that the plant had previously closed). Therefore, we find this argument without merit. For these reasons, we overrule Ford's three objections.
 {¶ 9} After an examination of the magistrate's decision, an independent review of the evidence, pursuant to Civ. R. 53, and due consideration of Ford's objections, we overrule the objections. Accordingly, we adopt the magistrate's decision as our own with regard to the findings of fact and conclusions of law, and deny Ford's request for a writ of mandamus.
Objections overruled; writ of mandamus denied.
 BRYANT and GREY, JJ., concur.
GREY, J., retired of the Fourth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution. *Page 6 
 APPENDIX A MAGISTRATE'S DECISION Rendered on August 22, 2008 IN MANDAMUS {¶ 10} Relator, Ford Motor Company ("Ford"), has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial *Page 7 
Commission of Ohio ("commission") to vacate the award of temporary total disability ("TTD") compensation awarded to respondent Veada R. Irby ("claimant") after finding that her retirement was involuntary in nature, and ordering the commission to deny claimant TTD compensation.Findings of Fact:
 {¶ 11} 1. Claimant sustained a work-related injury on April 25, 1997, and her claim has been allowed for "contusion left elbow; aggravation of pre-existing bilateral patellofemoral arthritis."
 {¶ 12} 2. Following bilateral arthroscopic knee surgery in 1998, claimant returned to a light-duty position at Ford until 2003. Claimant was unable to return to her former position of employment due to her allowed conditions.
 {¶ 13} 3. The medical evidence in the record indicates that claimant continued to have significant knee pain in spite of the treatment she received.
 {¶ 14} 4. Claimant retired from Ford effective March 1, 2003. At that time, claimant had completed 30 years of service with Ford and was 58 years old. Medical evidence in the record indicates that claimant continued to have significant pain and other problems with her knees. In an office note dated September 27, 2002 from her treating physician, R. Scott Jolson, M.D., the following notation was made: "She states she is retiring at the end of this year and hopes that getting off the concrete floor will make a big difference."
 {¶ 15} 5. Claimant was seen by Andrew M. Roth, M.D., on August 18, 2006. Dr. Roth indicated: *Page 8 
 * * * She had a good result from the steroid injections to the knees at the last OV. * * * She was able to walk better for a while. However, they wore off about 6 weeks later. Since then, she reports pain stiffness, numbness and swelling bilaterally, L to R. The pain is worse anteriorly. On the Left, the medial aspect always feels like it is "shifting more medially" when walking. She reports that it has buckled recently, 3 times over the last 1-2 weeks. The Right knee pain is worse over the anteromedial aspect. Climbing steps is becoming more difficult. She primarily uses just the right leg walking up steps.
 Her symptoms have been present for 9 years. Right knee pain is moderate with a rating of 5/10. Left knee pain is moderate, 6/10. The problem is characterized as constant and aching. Additional symptoms include swelling and difficulty walking. Sleep is interrupted. Symptoms are relieved while resting and with heat and are made worse with activity, when sitting, while walking and when climbing stairs. The symptoms are worse in the evening.
 {¶ 16} Dr. Roth strongly recommended that claimant undergo bilateral total knee replacement surgery.
 {¶ 17} 6. Claimant underwent total knee replacement surgery on May 16, 2007. Thereafter, claimant requested TTD compensation from Ford beginning May 15, 2007.
 {¶ 18} 7. In a letter dated April 26, 2007, Ford denied the request for TTD compensation as follows:
 * * * [B]ased on the fact that you went on voluntary retirement from Ford Motor Company effective 3/1/03, our position is that you are not entitled to temporary total disability benefits beginning 5/16/07. If you disagree with this decision, you may file a C-86 Motion[.] * * *
(Emphasis sic.)
 {¶ 19} 8. Claimant's motion was heard before a district hearing officer ("DHO") on July 24, 2007 and was denied. The DHO found that there was insufficient persuasive *Page 9 
evidence indicating that claimant's retirement was due to the allowed conditions. As such, the DHO determined that claimant had voluntarily abandoned the workforce effective March 1, 2003, the date of her retirement. Having determined that claimant's retirement was voluntary, the DHO discussed the effects of claimant's attempts to work following her retirement:
 The District Hearing Officer finds that the injured worker subsequent to her retirement re-entered the workforce. The District Hearing Officer finds the injured worker worked for Care-Staff for 3 months in the year 2004 and that she worked for Cosmetic Concepts for 4 to 5 months in the year 2005. However, the District Hearing Officer finds that the injured worker has submitted no evidence indicating that she was unable to continue her employment with these employers due to the allowed conditions in this claim.
 {¶ 20} 9. Claimant appealed and the matter was heard before a staff hearing officer ("SHO") on September 7, 2007. The SHO vacated the prior DHO's order and found that TTD compensation was payable to claimant. Specifically, the SHO determined that claimant's retirement was involuntary as follows:
 The Staff Hearing Officer finds that the injured worker's retirement from employment on 03/01/2003 is not a barrier to the payment of temporary total disability compensation in this claim. The injured worker testified at the hearing that she took early retirement because she was eligible to retire and because the symptoms from the allowed conditions in this claim interfered with her ability to continue to work. The Staff Hearing Officer finds that the fact that the injured worker took a regular retirement, in and of itself, is not evidence that the injured worker abandoned the workforce. The Staff Hearing Officer further finds that the office record of Dr. Jolson dated 09/27/2002 indicates that the injured worker hoped that her retirement from employment would help to ease her symptoms of pain. The Staff Hearing Officer therefore finds that the injured worker is entitled to the payment of temporary total disability compensation. *Page 10 
 This order is based upon the C-84 from Dr. Roth dated 04/11/2007, the office record of Dr. Jolson dated 09/27/2002, the letter from Ford Motor Company signed 07/23/2007 and the testimony of the injured worker at the hearing.
 {¶ 21} 10. Ford's appeal was refused by order of the commission mailed October 18, 2007.
 {¶ 22} 11. Ford filed a request for reconsideration arguing that claimant's retirement was voluntary and asserting that this court's recent decision in State ex rel. Pierron v. Indus. Comm.,172 Ohio App.3d 168, 2007-Ohio-3292 applied and that claimant was not entitled to TTD compensation.
 {¶ 23} 12. By order mailed January 5, 2008, Ford's request for reconsideration was denied.
 {¶ 24} 13. Thereafter, Ford filed the instant mandamus action in this court.
Conclusions of Law: {¶ 25} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. State ex rel. Pressley v. Indus. Comm.
(1967), 11 Ohio St.2d 141. A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. State ex rel. Elliott v. Indus. Comm. (1986), 26 Ohio St.3d 76. On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. State ex rel. Lewis v. Diamond FoundryCo. (1987), 29 Ohio St.3d 56. Furthermore, questions of credibility and the weight to be *Page 11 
given evidence are clearly within the discretion of the commission as fact finder. State ex rel. Teece v. Indus. Comm. (1981),68 Ohio St.2d 165.
 {¶ 26} TTD compensation awarded pursuant to R.C. 4123.56 has been defined as compensation for wages lost where a claimant's injury prevents a return to the former position of employment. Upon that predicate, TTD compensation shall be paid to a claimant until one of four things occurs: (1) claimant has returned to work; (2) claimant's treating physician has made a written statement that claimant is able to return to the former position of employment; (3) when work within the physical capabilities of claimant is made available by the employer or another employer; or (4) claimant has reached maximum medical improvement. See R.C. 4123.56(A); State ex rel. Ramirez v. Indus.Comm. (1982), 69 Ohio St.2d 630.
 {¶ 27} In the present case, it is undisputed that claimant's allowed conditions prevent her from returning to her former position. Further, although Ford accommodated claimant's restrictions, claimant is no longer working for Ford. Lastly, it is undisputed that claimant needed total knee replacement surgery due to the allowed conditions.
 {¶ 28} In the present case, the issue which needs to be addressed is whether or not claimant's retirement from Ford was voluntary or involuntary. If claimant's departure from the workforce was involuntary (which includes retirement taken because of industrial injuries), TTD compensation would be appropriate. However, if claimant's departure was voluntary (which includes retirement for non-industrial injuries), then TTD compensation is generally inappropriate.
 {¶ 29} The voluntary nature of any claimant's departure from the workforce or abandonment is a factual question which centers around the claimant's intent at the time *Page 12 
of retirement. In State ex rel. Diversitech Gen. Plastic Film Div. v.Indus. Comm. (1989), 45 Ohio St.3d 381, the Supreme Court of Ohio stated that consideration must be given to all relevant circumstances existing at the time of the alleged abandonment. Further, the court stated that the determination of such intent is a factual question which must be determined by the commission.
 {¶ 30} If it is determined that a claimant's retirement from a job was voluntary, TTD compensation can be awarded only if the claimant has reentered the workforce and, due to the allowed conditions from the industrial injury, becomes temporarily and totally disabled while working at that new job. State ex rel. McCoy v. Dedicated Transport,Inc., 97 Ohio St.3d 25, 2002-Ohio-5305. However, a claimant's complete abandonment of the entire workforce precludes the payment of TTD compensation altogether. State ex rel. Jones Laughlin Steel Corp. v.Indus. Comm. (1985), 29 Ohio App.3d 145; State ex rel. Baker v. Indus.Comm. (2000), 89 Ohio St.3d 376.
 {¶ 31} In the present case, the commission specifically found that claimant's retirement was involuntary and was related to the allowed conditions in the claim. Specifically, the commission cited claimant's testimony that she took early retirement because she was eligible and because the symptoms from her allowed conditions interfered with her ability to continue to work. The commission also relied on the September 27, 2002 office note from Dr. Jolson indicating that claimant was going to retire at the end of the year and hopes that getting off the concrete floor will make a big difference in her condition.
 {¶ 32} Ford argues that the commission abused its discretion in finding that claimant's retirement was involuntary. Ford contends that her retirement was voluntary *Page 13 
and that applying the voluntary abandonment rules, claimant is not entitled to TTD compensation because she abandoned the entire workforce. Further, Ford argues: (1) Dr. Jolson's office note is not "some evidence," and (2) the mere fact that the allowed conditions interfere with claimant's ability to continue working is not enough — the conditions must prevent her from being able to perform that job.
 {¶ 33} Ford argues that the commission misinterpreted Dr. Jolson's office note. The commission cited this note in support of its finding that claimant's retirement was due, in part, to her allowed conditions. The office note provides that claimant "is retiring at the end of this year and hopes that getting off the concrete floor will make a big difference." At that time (September 2002), claimant continued to have pain and Dr. Jolson opined that knee replacements were the only remaining surgical option. Obviously, claimant continued to have problems at work due to her allowed conditions. This note and her testimony are some evidence that her decision to retire was based in part on her allowed conditions. The commission did not abuse its discretion by relying on Dr. Jolson's office note as some medical evidence supporting claimant's decision to retire.
 {¶ 34} Ford also argues that, in order for her retirement to be involuntary, the allowed conditions must have actually prevented her from performing the light-duty job Ford provided. Ford contends that the fact that the allowed conditions "interfered" with her ability to perform is not enough. Ford cites State ex rel. McGraw v. Indus.Comm. (1990), 56 Ohio St.3d 137 in support. However, in McGraw, the commission found that the injured worker quit for reasons unrelated to the injury. In the present case, the commission found that claimant's retirement was sufficiently related to her allowed *Page 14 
conditions and was, therefore, involuntary. This is a factual determination which should not be reweighed in a mandamus action.
 {¶ 35} Ford also cites this court's decision in Pierron in support of its argument. In Pierron, the commission determined that the injured worker had retired from his position of employment for reasons unrelated to the industrial injury. The injured worker found a part-time job delivering flowers from approximately April 1997 to March 1998. In June 2003, the injured worker moved for the allowance of additional conditions and for TTD compensation. The commission found that his retirement was unrelated to the industrial injury and the limited work he performed was not sufficient to demonstrate that he had not abandoned the entire workforce.
 {¶ 36} The injured worker filed a mandamus action in this court and the commission's determination was upheld. After agreeing with the commission's determination that the injured worker's retirement wasvoluntary, this court found that even if he had not intended to abandon the entire workforce, his claim for TTD compensation would fail for two additional reasons. First, only claimants who are "gainfully employed" at the time of reinjury are again eligible for TTD compensation and there was no medical evidence in the record that the injured worker left his job at the flower shop due to the allowed conditions in the claim.
 {¶ 37} As noted previously, in the present case, the commission first determined that claimant's retirement was involuntary. Because there is some evidence in the record supporting that determination, the principles espoused by this court in Pierron do not apply here.Pierron only applies if the departure from the workforce was found to bevoluntary. *Page 15 
 {¶ 38} Although not completely on point, this case bears some similarities to the situation described by this court in State ex rel.Powertrain Div., General Motors Corp. v. Indus. Comm., Franklin App. No. 06AP-1268, 2007-Ohio-6773. In that case, the injured worker was not able to return to her former position of employment; however, she returned to light-duty work with her employer but was laid off when that position was no longer available. Thereafter, she was paid TTD compensation. Shortly thereafter, the employer offered a retirement package to certain employees, including the injured worker. The injured worker took the early retirement. Thereafter, her employer moved to terminate her TTD compensation on grounds that she voluntarily abandoned her job when she retired. The employer argued that Pierron applied.
 {¶ 39} In finding that Pierron did not apply, this court reiterated that the voluntary nature of retirement is a factual question that revolves around the employee's intent at the time of retirement and that questions of credibility and weight to be given evidence are within the commission's discretion as fact finder. Teece. In conclusion, this court stated: "[W]e find that Pierron actually renders support to claimant because there is some evidence to support the commission's factual determination that claimant's retirement was not voluntary."Powertrain at ¶ 12.
 {¶ 40} In the present case, the commission determined that claimant's retirement was related enough to her allowed conditions to render it involuntary in nature. This is a factual determination made by the commission and there is "some evidence" to support it. Involuntary abandonments are treated differently from voluntary abandonments. Where the retirement is involuntary, the voluntary abandonment rules andPierron do not apply. *Page 16 
 {¶ 41} Based on the foregoing, it is this magistrate's conclusion that Ford has not demonstrated that the commission abused its discretion in awarding claimant TTD compensation and this court should deny relator's request for a writ of mandamus. *Page 1